DARWIN v. CHARLOTTE, COLUMBIA & AUGUSTA R. R. CO.

1. While a railroad company cannot be said to owe no duty to one who unlawfully intrudes himself upon its engines or cars, it does not owe to him the same duty that it owes to a passenger, or even to one of its employees.

2. If a stranger takes his seat upon the pilot of the engine of a construction train, in sight of the engineer, and in that position is killed by a collision with a car upon the track, this would show no negligence by the company; and action for damages being brought by the administrator of the deceased against the company, a non-suit should be granted.

3. The proof by plaintiff of gross contributory negligence on his part does not authorize a non-suit; contributory negligence is a matter of defence, and presents a question of fact to be solved by a jury.

4. When a trespasser places himself upon the pilot of an engine, and is permitted by the engineer, in violation of the rules of the railroad company, to remain there, and is killed, the company is not liable.

5. Where a trespasser gets, without authority, upon the most dangerous place on a railroad engine and is killed, he is guilty of contributory negligence, and no recovery of damages for his death can be obtained against the company, even if the company had been guilty of negli-

gence, and although the engineer knew the person was in such place of danger and did not warn him off. In the case of a passenger, the rule would be different.

6. Contributory negligence ceases to be a defence only where the injury complained of is shown to have been done wilfully or purposely, or is the result of such gross negligence as would imply wantonness or recklessness.

Mr. Chief Justice Simpson and Mr. Justice McGowan concurred in the result.

Before Cothran, J., York, November, 1884.

This was an action by John A. Darwin, as administrator of Peyton A. Darwin, who was a boy of seventeen years of age at the time of his death on the leased road of the defendant company. The opinion fully states the case.

*Mr. J. H. Rion,* for appellant.

*Mr. W. B. Wilson,* contra, cited 19 *Ill.,* 499; *Shear. & Redf. Negl.,* §§ 35, 36, 65, 79; 4 *Ind.,* 97; 10 *Mees. & W.,* 546; 16 *Conn.,* 421; 11 *East.,* 60; 9 *Ind.,* 399; 6 *Id.,* 416; 2 *Duv. (Ky.),* 114; 3 *Ohio St.,* 195; 18 *N. Y.,* 259; 95 *U. S.,* 441; 3 *Allen,* 178; 20 *N. Y.,* 430; 44 *Penn.,* 376; 4 *Exch.,* 244; 5 *N. Y.,* 48; 8 *Id.,* 222; 11 *Id.,* 432.

November 2, 1885. The opinion of the court was delivered by

Mr. Justice McIver. On June 27, 1884, the plaintiff's intestate was killed on the Chester & Lenoir Narrow Gauge Railroad under the following circumstances, and this action is brought by the plaintiff, as his administrator, against the defendant company, lessees of said railroad, to recover damages occasioned by such killing. The engineer in charge of a construction train uncoupled his engine from the train to which it was attached and went down the road for a supply of water, the deceased going with him on the engine. Returning, Darwin was riding on the pilot of the engine, and when it reached the cars it collided with them and Darwin was crushed between the engine and the cars, causing his immediate death.

There was some testimony tending to show that at the time of

the collision the engine was running faster than usual when coupling; and a railroad engineer who was examined as a witness testified that the speed of the locomotive at the time of the collision must have been at least four miles an hour, too fast for approaching a train of cars for coupling. The engine was in good order, and when examined, immediately after the accident, the brakes were found to be wound up tight. The pilot is the most dangerous place for one to ride on, and one of the printed rules of the company, put in the hands of every engineer on the road, was that the engineer should not allow any one, except the fireman or road master, to ride on the engine under penalty of discharge. There was no positive testimony that the engineer knew that Darwin was on the engine at the time of the accident, though two colored women standing on the side of the track opposite the point where the collision took place testified that the engineer could have seen him. This is a very brief statement of the testimony, which is set out in full in the record.

On the close of the testimony for the plaintiff, the defendant's counsel moved for a non-suit upon two grounds. 1. Because "there was no sufficient proof of any negligence" on the part of the company. 2. Because "the undisputed proof of the plaintiff established beyond a reasonable doubt that the deceased had been guilty of gross contributory negligence." The motion was refused, and the defendant offering no testimony, the case went to the jury.

The defendant, amongst other things, requested the judge to charge "that if the jury find that the engineer was violating the rules of the defendant in allowing the deceased to ride upon the pilot of the engine, then the defendant is not liable for the killing." This request was refused, "because there was a neglect of duty upon the part of the defendant shown; for it was the duty of the company to employ engineers who are faithful in the discharge of duty." The next request was "that the defendant is not liable for the result of the unauthorized act of the engineer, done against its rules, and resulting from the voluntary act of the one killed." This request was also refused, for the same reason as that given above.

The judge was next requested to charge "that even if the jury

are satisfied that in this case the defendant is responsible for the acts of the engineer, and the engineer was guilty of great negligence and want of care, yet the plaintiff cannot recover if the deceased was also guilty of contributory negligence; that is to say, that he did not observe proper care under the circumstances." To this request the Circuit Judge responded as follows: "This, gentlemen, brings in the exception under which this case comes to you, and on account of which I refused the non-suit asked. If the defendant, by its agent, knew that this young man was there, and did not take proper care not to injure him, then the defendant is responsible for the result."

The last request was in these words: "That if the deceased failed to observe proper care under the circumstances, the plaintiff cannot recover." To which the judge responded as follows: "I refuse this for the same reason as the last request to charge. If deceased was in a place of danger, and the agent allowed him to remain there, and by carelessness ran into the cars and killed deceased, then the company is liable. * * * Suppose you come to the conclusion that the engineer, not using due care and proper caution, knowing that the young man was in that place of danger, and by his neglect and want of proper caution caused the death, then the company is liable. It was the duty of the agent, seeing him in that place of danger, to warn him off; and seeing he did not get off, to use such care and caution in the management of his engine so as not, if practicable, to injure the lad. If he failed so to do, the company is liable. In the *Jones Case*, which you heard read from Otto, the point is this, that the engineer did not know, as the agent did in this case, that the cars were on the track in the tunnel, forming the obstruction."

The jury having rendered a verdict for the plaintiff, defendant appeals, alleging error in refusing the motion for non-suit upon both of the grounds taken, and in refusing the requests to charge as above stated.

It is essential to bear in mind, throughout the consideration of this appeal, that this is not the case of a passenger, or even of an employee, who is understood to assume the risks incident to his employment, who has been injured on defendant's railroad; but it is a case of a bald trespasser who, without lawful authority,

intruded himself upon defendant's engine, and was there injured. It must be manifest that a railroad company does not owe the *same duty* to a trespasser that it does to a passenger or one of its employees, though we do not go to the extent of holding, as some of the cases (*Duff* v. *Alleghany R. R. Co.*, 91 *Penn. St.*, 458 ; *S. C.* 36 *Am. Rep.*, 675; and *Canley* v. *Pittsburgh, Cincinnati & St. Louis Railway Company*, 95 *Penn. St.*, 398; *S. C.* 40 *Am. Rep.*, 664) seem to do, that a railroad company owes *no duty* to one who trespasses upon its tracks or unlawfully intrudes himself upon its engines or cars.   No one can safely disregard the ordinary instincts of humanity and shield himself from responsibility for an injury done, even to a trespasser, by its wanton or reckless disregard of such instincts.

So far as we are informed, there is no case in this State which defines the measure of duty which a railroad company owes to one who unlawfully intrudes upon its engines or cars.   The nearest approach to it is the case of *Carter* v. *C. & G. R. R. Co.* (19 *S. C.*, 20), in which the action was brought to recover damages for an injury sustained by a trespasser upon the track of the defendant company.   In that case, the court, in speaking of one of the requests to charge, used this language: "So, too, although the second part of the request may have been good technical law, to wit, 'that if the deceased was upon the track of the defendant without lawful authority, and using it for his own convenience, he was a trespasser, and the company were under no obligation to take precautions against possible injuries to trespassers,' yet this principle could not have shielded the defendant from such injury as may have been produced by its negligence, if any, in every case without exception.   It would, no doubt, require a much stronger case to make out negligence as to a trespasser than is required in ordinary cases, but we have found no case which goes to the extent of declaring that a trespasser has no protection."   Citing 2 *Thomp. Negl.*, 1162, in notes.

Now, the rule, as laid down in *Gunter* v. *Graniteville Man. Co.*, 15 *S. C.*, at page 456, in reference to the liability of a master for an injury sustained by one of his servants by reason of the negligence of a fellow-servant, is that the master is not liable unless he has been guilty of negligence in selecting or supervis-

ing such fellow-servant. The court there uses this language: "Where an injury has happened to a servant or employee, the master's liability is fixed as follows: * * * If it results from defective machinery or the negligent act of a co-servant with the injured party, he is not responsible unless the proof shall go further and show that the master's negligence or want of reasonable care in purchasing and overlooking his machinery, or in employing and supervising his servants, was the cause of his having defective machinery in use and negligent servants engaged." Assuming, in this case, that the disaster which resulted in Darwin's losing his life was caused by the negligence of the engineer, yet if Darwin had been a fellow-servant of the engineer instead of a trespasser, under the rule just stated the plaintiff could not recover against the company unless the proof went further and showed negligence either in the employment or the supervising of the engineer.

And shall the company be held to owe a higher duty to a trespasser than it does to one of its servants? Shall it be held responsible in damages to a trespasser when, under the same state of facts, it would not be responsible to one of its employees? In this case there is not the slightest evidence that the company had been guilty of any negligence in employing the engineer, or that it knew, or had any reason to suspect, that he was negligent in the discharge of his duties. Nor was there any testimony tending to show that the company had been negligent in supervising the conduct of the engineer; on the contrary, the testimony shows that stringent orders, under a heavy penalty, had been placed in the hands of all of its engineers, doubtless designed to prevent just such accidents as here occurred. Of course, we need scarcely add that this rule would not apply in the case of a passenger to whom the company owes a much higher duty. Even, therefore, if it be assumed that there was evidence of negligence on the part of the engineer, we do not see the slightest evidence of any negligence on the part of the company, and hence the non-suit ought to have been granted upon this ground.

. The second ground upon which the non-suit was claimed cannot be sustained under the case of *Carter* v. *C. & G. R. R. Co.*,

*supra.* Contributory negligence is a matter of defence, and presents a question of fact to be solved by a jury.

The first and second requests were, as we have already shown in discussing the question of non-suit, improperly refused in this case, where the question is as to the liability of the company to a trespasser. The fact that the engineer was negligent in this particular instance was no evidence that he was habitually so, and much less was it any evidence that the company knew it, or that it had been guilty of negligence in employing him. All misconduct must have a beginning, and, so far as the testimony shows, this was the first and only act of negligence on the part of the engineer. Certainly there was no testimony tending to show that the company, at the time the engineer was employed, or afterwards, knew or had any reason to suspect that he was, or was likely to be, negligent in the discharge of his duties. While, therefore, the reason given by the Circuit Judge for refusing these requests might have been sufficient if the question was as to the liability of the company for an injury sustained by a passenger, we do not think such reason sufficient in a case of this kind.

The other requests to charge which were refused involve the law as to contributory negligence. The rule upon this subject is laid down in the case of *Gunter v. Graniteville Man. Co., supra,* in the following language: "The question in all the cases seems to be, has the damage or injury complained of been occasioned entirely by the negligence or improper conduct of the defendant, or, notwithstanding such improper act of defendant, would the injury have been avoided but for the negligence or want of ordinary care of the plaintiff? In the former case, the plaintiff is entitled to recover. In the latter, the defendant is entitled to the verdict. * * * In other words, the courts cannot undertake in these cases to solve the problem how far such party may have contributed to the unfortunate result and by this means assess the damages on each *pro rata.* The only question that can be considered is, has the defendant entirely caused the injury? If so, he is responsible. If, however, the injury could have been avoided by reasonable or proper care on the part of the plaintiff, then the defendant is held harmless."

This is an authoritative statement of the rule, and, what is more, it is well sustained by reason. It certainly would be very unjust to allow a person who has sustained an injury by the negligence of another to recover damages for such injury when it is made to appear that he himself contributed by his own negligence to the cause of such injury, or when by proper care on his part he might have avoided it altogether. This would, in effect, be giving one compensation for his own default, and would amount to the offer of a premium for negligence or want of proper care of one's own person.

In *Railroad Co.* v. *Jones* (95 *U. S.*, 439), the plaintiff, who was employed by the company in repairing its roadway, while being transported from his place of work by a train to which was attached a box car for the hands to ride in, was riding on the pilot of the engine, when by a collision with other cars in a tunnel which had become detached from another train, was severely injured, and brought his action for damages. The defence was contributory negligence. The court said: "One who by his negligence has brought an injury upon himself cannot recover damages for it. * * * But where the defendant has been guilty of negligence also in the same connection, the result depends upon the facts. The question in such cases is (1) whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or (2) whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution that but for such negligence or want of care and caution on his part the misfortune would not have happened. In the former case, the plaintiff is entitled to recover; in the latter, he is not."

This case is identical in principle with the one now under consideration, for it will be found upon examination that the points of difference pointed out by the Circuit Judge and the counsel for respondent were not regarded as material by the court. The distinction alluded to by the Circuit Judge, that there the engineer did not know, as the engineer did in this case, that the cars were on the track in the tunnel, forming the obstruction, does not very clearly appear in the case; and, on the contrary, the court uses this language: "The facts with respect to the cars

left in the tunnel are not fully disclosed in the record." But, even assuming that the engineer did not know that the cars were in the tunnel, this fact could only bear on the question of defendant's negligence, and the court said expressly that "for the purposes of this case, we assume that the defendant was guilty of negligence."

So the language quoted by respondent's counsel that "the plaintiff was on the pilot at the time of the accident without the knowledge of any agent of the defendant," while it is found in the opinion of the court, is in that portion of it where the learned justice is stating the testimony adduced by the defendant, and does not occur in that part of the opinion where the question of contributory negligence is discussed. On the contrary, it is there said: "The knowledge, assent, or direction of the company's agents as to what he (alluding to the plaintiff) did is immaterial." Again it is said: "The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his (the plaintiff's) part. Without the latter the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped also if he had been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit. The case is thus clearly brought within the second of the predicates of mutual negligence we have laid down." Accordingly it was held that the plaintiff was not entitled to recover.

The case practically decides that where one voluntarily places himself in a position on a railroad train known to be dangerous, he cannot recover damages from the company for injuries sustained by a collision upon the ground of contributory negligence, even though his position was known to the agents of the company, and the collision was occasioned by defendant's negligence. This decision, therefore, fully sustains the view which we take of the case now under consideration. Indeed, the present·case is much stronger than the one just cited. Here the deceased was on the engine without authority, where he had no right to be,

and voluntarily placed himself in a position which the evidence shows was the most dangerous place he could have selected, and in so doing was clearly guilty of contributory negligence. The unfortunate result was due to his own unlawful and reckless act; and even if the defendant had also been guilty of negligence, he should not be permitted to recover damages for an injury to which he himself contributed, although the engineer may have known that he was in such a dangerous place and did not warn him off.

In the case of a passenger the rule would be different, for in such case it is the duty of the company, through its conductor, to look after the comfort and safety of the passengers, and if one of them is known to be in a dangerous position on the train, it would be the duty of the conductor to warn him of his danger; and if he failed to do so, it might be regarded as equivalent to the consent of the company, through its agent, to carry safely such passenger, even in such dangerous position. But to a trespasser the company owes no such duty. The company is not bound to assume, or even expect, that trespassers will intrude themselves into dangerous places upon their trains, and is therefore under no obligation to provide for their safety by warning them of the danger of their unlawful and reckless acts; but in the case of passengers, whom the company does expect and invite to travel upon their trains, they are under obligation to look after their safety, and if such duty is neglected by their agent appointed for that purpose, they would be liable for the damages resulting from such neglect.

In *Flower* v. *Penn. R. R. Co.* (69 *Penn. St.*, 210, found in 8 *Am. Rep.*, 251), an engine, tender, and one car ran from the station where the train had stopped down to a water tank, in charge of the fireman, who asked a boy about ten years old standing there, to put in the hose and turn on the water. While the boy was climbing upon the tender to comply with the request, some detached cars belonging to the train came down with ordinary force and struck the car next to the tender, whereby the boy was thrown down and crushed to death, and the court held that the company was not liable. In the opinion it is said: "The true point of this case is, that in climbing the side of the tender

or engine, at the request of the fireman, to perform the fireman's duty, the son of the plaintiff did not come within the protection of the company. To recover the company must have come under a duty to him, which made his protection necessary.   *   *   * Here the boy was voluntarily where he had no right to be, and where he had no right to claim protection.   *   *   * The only apology for his presence there is the unauthorized request of one who could not delegate his duty, and had no excuse for visiting his principal with his own thoughtless and foolish act."

In *Eaton* v. *Delaware L. & W. R. R. Co.* (57 *N. Y.*, 382, reported also in 15 *Am. Rep.*, 513), plaintiff was invited by the conductor of defendant's coal train to ride on the train, which was never used to transport passengers, and, on the contrary, by the printed regulations of the company, of which, however, the plaintiff had no notice, passengers were forbidden to ride on coal trains. While on the train the plaintiff was injured through the negligence of the employees of the company ; *held*, that the company was not liable. The court said that the unauthorized act of the conductor in inviting the plaintiff to ride on the train could not be attributed to the company so as to create the relation of carrier and passenger, and thereby impose upon the company the duty of care in the transportation of the plaintiff; that he could only be lawfully on the train by an authorized act of the conductor. "It is not necessary to consider whether he was a trespasser. It is enough to hold that a duty to be careful toward him could only spring up on the part of the defendant by an act on the conductor's part, coming within the scope of his authority."

In *Everhart* v. *Terre Haute & Ind. R. R. Co.* (78 *Ind.*, 292; *S. C.* 41 *Am. Rep.*, 567), the plaintiff, who was not in the employ of the company, at the request of one of its employees, got on a slowly moving car and applied the brakes. While so occupied he was injured by a collision with other cars, caused by the negligence of other employees, and it was held that he had no remedy against the company. The court said that he was not "in any better condition, legally, than if he had been a mere intermeddler, undertaking to perform the service without request or direction from any one, because, as we have seen, he

was not requested or directed to get upon the car and apply the brake by any one having power from the defendant to authorize him to do so. The defendants owed him no duty, either as an employee, passenger, or traveller upon a highway crossed by the railroad.''

In *New Orleans, Jackson, &c., R. R. Co.* v. *Harrison* (48 *Miss.*, 112; *S. C.* 12 *Am. Rep.*, 356), the conductor of a train ordered a boy, fifteen years of age, not in the service of the company, to uncouple the cars, notoriously a dangerous duty, especially to an inexperienced person, and he was injured by the negligence of the defendant's servants. Held, that he could not recover from the company, the court saying, amongst other things : "If uncoupling the cars was voluntary by Harrison, it was an act of most extraordinary rashness and folly, and one which contributed directly to the injury. It is not the degree of his carelessness, however, which exonerates the company, but the question to be determined is, whether his negligence contributed to the injury of which he complains. It is enough to defeat him if the injury might have been avoided by his exercise of ordinary care, and this rule is based upon grounds of public policy, which require, in the interest of the whole community, that every one shall take such care of himself as can reasonably be expected of him."

From these cases it will be seen that the fact that it was known to the conductor or other officer in charge of a train that the person injured had, by his own recklessness, placed himself in a dangerous position, does not affect the question, and that such fact cannot have the effect of overcoming the defence of contributory negligence. It is true that there are cases, many of which were cited by respondent's counsel, tending to establish an exception to the general rule as to contributory negligence, to the effect that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, if the defendant after becoming aware of the plaintiff's danger, could, by the exercise of ordinary care and diligence, have avoided injuring him ; but no such exception has been recognized by the courts of this State, by the Supreme Court of the United States, or by many of the States. In *Gunter's Case*, cited above, the defendant must have been

aware of the danger to which the plaintiff was exposed in operating the loom in the condition in which it was, and yet it was laid down without qualification or exception that if the negligence of the plaintiff contributed to the injury, she could not recover, notwithstanding the negligence of the defendant.

It seems to us that the correct rule is laid down in *Pennsylvania Company* v. *Sinclair* (62 *Ind.*, 301; *S. C.* 30 *Am. Rep.*, 185), where the cases *pro* and *con* are collected in a note—that contributory negligence ceases to be a defence only where the injury complained of is shown to have been done wilfully or purposely; or, we would add, where it was the result of such gross negligence as would imply wantonness or recklessness.

We think, therefore, that the Circuit Judge erred in refusing to charge the two last requests of defendant, and that the mere fact that the engineer knew that the deceased was in a place of danger and did not warn him off, would not make the company liable, if the deceased, by his own negligence, recklessness, or want of care, contributed to the injury which he sustained.

· The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE McGOWAN concurred in the result.