The Pennsylvania Company v. Sinclair, Administrator.

THE PENNSYLVANIA COMPANY v. SINCLAIR, ADMINISTRATOR..

NEGLIGENCE.—*Railroad.*—*Action for Damages.*—*Pleading.*—*Evidence.*—In an action by the administrator of a decedent, against a railroad company, to recover for the alleged negligent killing of said decedent, by the servants of the defendant, while running a locomotive and train of cars across a public street in a populous part of the city, the complaint alleged,. that, when the decedent was run over and killed, the defendant was running such locomotive and train " at a recklessly and grossly negligent and dangerous rate of speed, to wit, at the rate of forty miles per hour," in violation of an ordinance of such city, limiting the rate of speed to six. miles per hour.

*Held*, it being admitted that the decedent was guilty of contributory negligence in stepping upon the track in front of the engine, that evidence that the defendant had wilfully committed the injury is not admissible under the complaint.

SAME.— *Wilful Injury.*—Where an intent, either actual or constructive, to commit an injury, exists at the time of its commission, such injury ceases to be a merely negligent act and becomes one of violence or aggression.

SAME.—*Contributory Negligence.*—Contributory negligence is a complete defence to an action for damages for a merely negligent injury.

SAME.— *When Contributory Negligence Ceases to be a Defence.*—It is only when the injury sued for is alleged,.in terms or substance, to have been wilfully committed, that contributory negligence ceases to be a defence.

From the Allen Circuit Court.

*J. Brackenridge, A. Zollars* and *F. T. Zollars*, for appellant.

*R. S. Robertson* and *L. M. Ninde*, for appellee.

NIBLACK, J.—This was an action by Thomas Sinclair, administrator of the estate of John Sinclair, deceased, against the Pennsylvania Company, for damages for killing the said John Sinclair.

The complaint was in two paragraphs.

The first stated, in substance, that, on the 29th day of October, 1873, the defendant was running and operating a locomotive and train of cars on and over the track of the Pittsburgh, Fort Wayne and Chicago Railway Company, where said track crosses Fairfield avenue, a public

street in the city of Fort Wayne; that said street was in a populous part of said city, and was used by persons on foot and otherwise; that, on that day, while the said John Sinclair was passing along and upon said street and over said track, with due caution on his part, the defendant, by its servants and agents, so carelessly run and operated said locomotive and train of cars, that the same were run upon and over the said John Sinclair, thereby causing his death; that the plaintiff had been duly appointed administrator of the estate of said deceased, and that he and William Sinclair and Jane Brunskill were the children and heirs at law of said deceased, concluding with a demand for damages in the sum of five thousand dollars.

The second paragraph set out again the same facts substantially, but averred that the defendant was running said locomotive and train of cars "at a recklessly and grossly negligent and dangerous rate of speed, to wit, at the rate of forty miles an hour," when the said John Sinclair was run over and killed; that, by an ordinance of said city, no train of cars was allowed to be run through that city at a greater rate of speed than six miles an hour; that, by the same ordinance, it was provided that a watchman should be kept at the said crossing of said railway and said avenue, to protect persons passing along said avenue and over said railway track from danger that might result from passing trains; that the defendant had notice of the passage of said ordinance, but had failed to comply with the same.

A demurrer to each paragraph of the complaint was overruled, and the defendant answered in general denial.

The jury trying the cause returned a verdict in favor of the plaintiff, assessing his damages at one thousand dollars, and, with the overruling of a motion for a new trial, judgment followed upon the verdict.

No question is made in the argument here, as to the

sufficiency of the complaint. We therefore assume that the demurrer to it was correctly overruled.

All the questions which we are required to consider are such as have arisen out of the causes assigned for a new trial by the defendant after the verdict, and relate principally and almost exclusively to the sufficiency of the evidence to sustain the verdict. We may say, generally, that it was made to appear by the evidence, that, when the alleged injury sued for was inflicted, Fairfield avenue was a public street in the city of Fort Wayne, of considerable importance, running from north to south, and used as such by the public in passing and repassing over the same; that the track of the Pittsburgh, Fort Wayne and Chicago Railway, running from east to west, crossed said avenue at right angles, where there were but few houses in the immediate vicinity; that the said railway track also crossed Broadway avenue, several hundred feet west of where it crossed Fairfield avenue; that, with the exception of some apple trees standing near Broadway avenue and the railway, there was an open area between Fairfield avenue and Broadway, south of the railway, extending south perhaps near, if not quite, two hundred feet; that certain railway shops, known as the Wabash shops, were located a short distance from, and immediately south-east of, the crossing of Fairfield avenue; that John Sinclair, the decedent, for whose death this suit was prosecuted, was an old man, one hundred and two years old, and resided with the plaintiff, who was his son, in Fort Wayne, on the north side of the railway so run and operated by the defendant; that the plaintiff was at the time employed in the Wabash shops, and for that reason, and possibly for others, the decedent was in the habit of frequently crossing and recrossing said railway track, at its junction with Fairfield avenue; that he was a remarkably active, sprightly and well-preserved man for one of his age, usually walking erectly and briskly, and in full possession of both the senses of hearing and seeing;

that, on the 29th day of October, 1873, the decedent, at near two o'clock, and at about the time one of the defendant's trains was due from the west, was on the south side of the railway track, and at some distance from it, and, becoming seemingly desirous of crossing back to the north side, on which he resided, started immediately in a northern direction along Fairfield avenue towards the track; that, about the time the decedent was first seen walking in the direction of the track, the train then due from the west came in sight; that the engineer, while somewhere in the vicinity of Broadway avenue, probably one hundred and fifty feet west of the crossing, saw the decedent approaching the track, without apparently observing the train, and caused the locomotive to give several sharp, quick whistles, indicative of danger, but the decedent, seeming not either to see or to hear the train, except as may have been indicated by a hastened movement, stepped on the track immediately in front of the locomotive, by which he was thrown with great force against an adjacent telegraph pole and almost instantly killed.

The witnesses differed as to whether the bell was rung before reaching the crossing, and there was a sharp and material conflict in the evidence as to the rate of speed at which the train was running when the collision with the decedent occurred.

We think the evident inference from the evidence is, that the decedent did not exercise due care in attempting to cross the railway track, as he did when he went upon it, and that he therefore negligently contributed to the injury which resulted in his death. It is not insisted by the appellee, that the evidence justifies us in concluding that the decedent was without fault on his part. The Terre Haute, etc., R. R. Co. v. Graham, 46 Ind. 239; The St. Louis, etc., R. W. Co. v. Mathias, 50 Ind. 65.

We need not, for that reason, further and more particularly refer to the evidence tending to establish the want of ordinary prudence and care on the part of the dece-

dent. Waiving all discussion as to whether or not the decedent was guilty of contributory negligence, the appellee contends, that it was shown upon the trial by at least a fair preponderance of the evidence, that, when the train struck the decedent, it was running at a rate of speed which, under the circumstances, amounted to such gross negligence and to such a wilful disregard of the public safety, and even human life itself, as to authorize a recovery by the appellee, under the second paragraph of the complaint, notwithstanding there may have been contributory negligence on the part of the deceased.

Those portions of the evidence which tended to show that, at the time of the accident, the train was running at a high and dangerous rate of speed, and that the decedent was struck with great force, are brought specially to our attention as sustaining that view of the evidence, but the conclusion at which we have arrived concerning the nature of the averments in the second paragraph of the complaint renders it unnecessary that we shall review that branch of the evidence.

There is a manifest want of uniformity in the authorities, in their attempts to define the precise circumstances under which a plaintiff may recover for an injury, when it is shown that he, by his negligence, contributed to the injury for which he sues, and it is to be regretted that this want of uniformity pervades some of the cases heretofore decided by this court, but we think many of the apparent differences which have arisen on this subject result more from an inapt use of words and phrases than from any difference in the ideas intended to be expressed. There has been of late a very strong tendency of judicial opinion, adverse to the distinction between gross negligence and ordinary negligence, in the sense in which those terms are used in the class of cases to which we have above referred, and with that tendency the doctrine has been gaining ground in this, and at least some of the other States, that something more than mere negligence,

however gross, must be shown, to enable a party to recover for an injury, when he has been guilty of contributory negligence; that, in such a case, something more aggressive than mere negligence must be alleged and proved. Strictly speaking, negligence is a non-feasance, not a malfeasance. It is an act of omission, rather than commission. In its secondary meaning, it may be said to include every omission to perform a duty imposed by law for the avoidance of injury to person and property. Where an intention to commit the injury exists, whether that intention be actual or constructive only, the wrongful act ceases to be a merely negligent injury, and becomes one of violence or aggression. Shearman & Redfield Negligence, sec. 2; Wharton Negligence, sec. 22, *et seq.*; *The Ohio, etc., R. W. Co.* v. *Selby*, 47 Ind. 471; *Railroad Co.* v. *Lockwood*, 17 Wal. 357.

When, therefore, the injury complained of is a negligent one merely, contributory negligence is a good defence to the action. It is only when the injury sued for is alleged, either in terms or in substance, to have been wilfully or purposely committed, that contributory negligence ceases to be a defence. By contributory negligence in this connection, we, of course, mean such negligence as has materially or substantially contributed to bring about the injury set up in the complaint. As a matter of evidence, proof that the misconduct of the defendant was such as to evince an utter disregard of consequences, so as to imply a willingness to inflict the injury complained of, may tend to establish wilfulness on the part of the defendant; but, to authorize a recovery on such evidence, there must be suitable allegations in the complaint to which it is applicable. The case of *The Cincinnati and Martinsville Railroad Co.* v. *Eaton*, 53 Ind. 307, fully sustains the views we have enunciated in this opinion.

Tested by the rules above laid down, we have come to the conclusion that the second paragraph of the com-

plaint in this case did not do more than charge a negligent killing of the decedent, and, hence, that its allegations were not sufficient to justify a recovery over proof of contributory negligence on the part of the deceased.

We are aware that there is a line of decisions establishing what is known as the English doctrine, to the effect that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, if the defendant, after becoming aware of the plaintiff's danger, could, by the exercise of ordinary care and diligence, have avoided injuring him. *Radley* v. *The Directors L. & N. W. R. W. Co.*, 18 English Reports with Moak's Notes, 37; Shearman & Redfield Negligence, sec. 36; Wharton Negligence, sec. 388. But we do not feel justified in disturbing what has been long accepted in this State as the better doctrine, after much discussion and consideration.

For the error of the court, in overruling the appellant's motion for a new trial, the judgment must be reversed.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial and for further proceedings.

Petition for a rehearing overruled.