The Terre Haute and Indianapolis Railroad Company v. Graham.

Filed May 8, 1884.

---

No. 6600.

THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY v. GRAHAM.

NEGLIGENCE.— *Railroads.*— *Wilful Injury.*— Gross negligence is not, as a matter of law, wilfulness; and in a suit against a railroad company for an injury resulting from such negligence, recklessness or wantonness, contributory negligence on the part of the plaintiff is a defence.

SAME.— *Trespasser.*—A railroad company is not liable for an injury to a trespasser upon its right of way unless wilfully inflicted.

From the Putnam Circuit Court.

*J. G. Williams, D. E. Williamson* and *A. Daggy*, for appellants.

*S. Claypool, L. P. Chapin* and *J. McClary*, for appellee.

ZOLLARS, J.—In April, 1870, appellee, while walking upon the track of appellant, near Greencastle, was struck, and his leg broken, by one of its engines drawing a passenger train. In July, 1871, the complaint, in three paragraphs, which we find in the record, was filed in the court below. Appellant demurred to each paragraph, and moved to strike out portions of the third. The demurrer and motion were overruled, and appellant excepted. Issue was joined by the filing of a general denial; the cause was tried, and judgment rendered for the appellee. From this judgment appellant appealed to this court, where the judgment was reversed for want of sufficient evidence, and a new trial ordered. It was also held that there was no error in overruling the demurrer

and motions to strike out.   *Terre Haute, etc., R. R. Co.* v. *Graham*, 46 Ind. 239.

The case was retried upon the same issues, in May, 1875. The jury disagreed, and was discharged.  In February, 1876, another trial was had upon the same issues, and resulted in a verdict, and, over a motion for a new trial, a judgment for $900 in favor of appellee.

From this judgment the appellant appealed, and filed the record in this court in October, 1877.  The evidence, instructions, and motions to strike out portions of the complaint are in the record by bills of exceptions.

In this court, appellant has assigned for error the overruling of the demurrer to the complaint, and the motion for a new trial.

The first paragraph of the complaint states, substantially, that on the 27th day of April, 1870, appellant, by its agents and employees, so carelessly and negligently ran and managed a locomotive and train of cars on and along its track west from Greencastle, that without giving appellee any warning of the approach of said locomotive, etc., appellee, without fault on his part, was negligently and carelessly run upon, his leg broken, and otherwise injured, etc., to his damage, etc.

In the second paragraph, it is alleged, in substance, that on said day, appellee was walking upon and along the track of appellant, on the ends of the ties thereof, for the purpose of going from Greencastle to Greencastle Junction; that he did not know that a train was approaching him; that the employees of appellant well knew that he was on the track and in danger, yet the defendant, by its conductor, engineer and other employees, did then and there so carelessly and negligently run and manage a locomotive and train of cars, that without giving appellee warning of the approach of said locomotive, the said train was wilfully and purposely, and without any regard for the rights or life of appellee, with great force and violence run against appellee, without fault

on his part, by means whereof his leg was broken, to his damage, etc.

In the third paragraph it is alleged, substantially, that the portion of appellant's road between the depot at Greencastle and Greencastle Junction had long been, and then was, used with the license and assent of appellant as a way for foot passengers to pass and repass, on and along; that appellee was passing on and over said portion of the road on foot, as he had been accustomed to do; that appellant, well knowing the premises, wilfully and purposely, and without any regard for the rights or life of appellee, with great force and violence, ran its train against and wounded him, without fault on his part, etc., to his damage, etc.

The following facts are established without conflict in the testimony: Commencing at a mile-post west of Greencastle, the railroad of appellant runs almost due west for about 1,700 feet, when it curves sharply to the south until it reaches what is known as McLain's Second Crossing, distant from the mile post 3,400 feet. Commencing at about 700 feet west of the mile-post, there is a knoll on the south side of, and adjoining, the track, five feet high above the track, and extending along the track for the distance of 500 feet and over. Adjoining, and south of the track, and commencing at about 1,350 feet from the mile-post, there is another knoll, extending along the track west about 400 feet, and six and one-half feet high above the track. The west end of this knoll is 1,700 feet west of the mile-post. About 600 feet west of said post there is an elevation on the north side of the track. In other words, as some of the witnesses say, the road runs through a cut at the points named. From the cut there is a down grade to the McLain crossing of from fifty to sixty feet to the mile. On the day of the injury to appellee, he passed the depot of appellant in Greencastle; saw people waiting for a train; "guessed it was about train time," but did not know which way the train was expected to go. It was a bright, sunny day, with a strong April wind from the west. Appel-

lee started to walk on appellant's track from Greencastle to Greencastle Junction. The train which caused the injury consisted of an engine, tender, baggage and express cars, and three coaches. At this time air brakes were not in use, and the only means of stopping the train was by the application of hand brakes, and the reversal of the steam. The train was on time, passing over the road west, and running with the steam cut off, at the speed of about twenty-eight or thirty miles an hour. Upon the grade at and near where the collision occurred, the train, moving at its rate of speed, could not be stopped in a less distance than from 900 to 1,100 feet. After the appellee had passed over the track west a distance of 1,500 feet to the cut, he heard the whistle of the engine at the depot, and looked back twice to see if the train was coming. Moving from the center of the track, he continued walking upon the ends of the ties on the north side, not knowing that the train had time to overtake him. The train struck him about 350 feet west of the cut, or the knoll, on the south side of the track, farthest west. From this knoll to the point of collision, the track curves to the south about 100 feet. Before and at the time the train emerged from the cut, the fireman, whose place was on the south side of the engine as it was moving, was engaged in sweeping or cleaning the cab, and did not see appellee until after the collision by which appellee's leg was broken. The engineer, who occupied the north side as the train was running, did not see the appellee until after the train emerged from the cut, when it was about 300 feet from appellee. The engineer thought appellee turned, as if to look back, and moved farther towards the north end of the ties, yet seemed to be careless and unconscious of the approach of the train, or the danger, as if abstracted in thought, until struck by the train. A number of other persons in the immediate vicinity of appellee when injured, and others considerably further west, heard the whistle at the depot, and the noise of the train as it passed over the

track until the collision, saw the train before the collision and tried to warn appellee, but he either did not hear or did not heed.

Following the collision, the train was stopped after running several hundred feet. Immediately upon the train being stopped, employees engaged upon it ran to appellee to ascertain who was injured, and the extent of the injury. The conductor asked him if he did not hear the whistle, why he did not get off the track, and whether he was drunk or crazy? To this appellee answered that he was neither; that he was absent-minded, and blamed himself as much as the railroad company; that if any signals were given he did not hear them. The engineer told appellee that he was sorry for him. The conductor sent a flagman to stop trains which might be following, backed up the train, put appellee upon it, took him back to Greencastle, where he lived, and left him in the ladies' room of the depot, in the care of the station agent. At the depot, and on the former trial, appellee, when questioned about the accident, stated that before and at the time of the collision he was absent-minded. The whistle was sounded, the bell rung, the brakes set, and the steam reversed about the time of the collision.

The above, as we stated, are the facts about which there is no conflict in the testimony. As to whether or not the signals were given, and efforts made to stop the train, before the collision, there is conflict in the testimony; seven witnesses testify that these preceded, and five that they followed the collision. One witness testified that after the injury appellee stated that he heard the signals, but did not know that they were for him.

For the purposes of this decision, it may be said that there was evidence tending to show that no signals of warning were given before appellee was struck by the train.

Upon this, and the undisputed facts above set out, is the appellant liable under either paragraph of the complaint?

It is very plain that appellee is not entitled to a recovery

The Terre Haute and Indianapolis Railroad Company v. Graham.

under the first paragraph, charging appellant with negligence. It is the general doctrine, and the settled law of this State, that where negligence is the issue, it must be a case of unmixed negligence; that, in such case, a party can not recover if it appear that by the want of ordinary care and prudence on his part he contributed to the injury, or if, by the exercise of ordinary care, he might have prevented the injury. *Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335 (5 Am. R. 201); *Higgins* v. *Jeffersonville, etc., R. R. Co.*, 52 Ind. 110; *St. Louis, etc., R. W. Co.* v. *Mathias*, 50 Ind. 65; *Jackson* v. *Indianapolis, etc., R. R. Co.*, 47 Ind. 454; Whart. Neg., section 300, and cases cited.

It is the well settled doctrine that although a traveller upon a public highway has equal rights with a railroad company to pass and repass over a crossing of such highway and railroad track, yet he must exercise reasonable care and prudence to avoid a collision with moving trains; that if he do not exercise such care, by the use of his sight and hearing, and by reason of such neglect contributes to his own injury, he can not recover from the railroad company, although it may have been guilty of negligence in the moving of its trains. *Bellefontaine R. W. Co.* v. *Hunter, supra; Toledo, etc., R. W. Co.* v. *Goddard*, 25 Ind. 185; *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301; *Terre Haute, etc., R. R. Co.* v. *Clark*, 73 Ind. 168.

In the case of *Bellefontaine R. W. Co.* v. *Hunter, supra,* the following doctrine was laid down: "No neglect of duty on the part of a railroad company will excuse any one approaching such a crossing from using the senses of sight and hearing, where these may be available; and injury where the use of either of such faculties would have given sufficient warning to enable the party to avoid the danger, conclusively proves negligence, and there can be no recovery; unless the railroad company has been guilty of such conduct as will imply an intent or willingness to cause the injury."

In this case, as the uncontradicted testimony shows, appellee went upon, and remained upon, the track without looking

or listening for approaching trains, and without exercising any care whatever for his safety. He was guilty of such negligence as would have precluded a recovery had the collision occurred at a crossing, where he might rightfully be.

There is much more reason for the application of the above rule in the case in hearing than in cases where the collision occurs at road crossings. In this case, the collision occurred between crossings, at a point where appellee had no right to be; he was upon the track as a trespasser, hence no kind of care on his part could make his presence there other than unlawful. In such case, the company is not liable on the ground of negligence in the running and management of its trains.

In the case of *Jeffersonville, etc., R. R. Co.* v. *Goldsmith*, 47 Ind. 43, this court said: "But between the stations and public crossings the track belongs exclusively to the company, and all persons who walk, ride, or drive thereon are trespassers, and if such persons walk, ride, or drive thereon at the sufferance, or with the permission of the company, they do so subject to all the risks incident to so hazardous an undertaking."

The company at all times owes a duty to passengers upon its trains to keep a lookout for obstructions upon the track, and if it fail to do so, and, by reason of such failure, a passenger suffer injury, the company is liable on the ground of negligence. But it can not be said, with reason, that it owes such duty to one trespassing upon the track. As to him, it is not bound to anticipate such intrusion, and is not liable if a collision occurs without its knowledge. In this case, the company is not liable, because its employees did not discover that appellee was upon the track sooner than they did, if, indeed, it was possible for them to have done so. See *Jeffersonville, etc., R. R. Co.* v. *Goldsmith, supra;* Cooley Torts, p. 660.

The liability of the company must be measured by the conduct of its employees, after they became aware of appellee's presence upon the track. That liability, however, after

The Terre Haute and Indianapolis Railroad Company *v.* Graham.

such knowledge, can not be fixed by the negligence of such employees, and this for the reason that, as to such negligence, the contributory negligence of appellee would defeat his right of recovery.

The able and learned counsel for appellee contend with much earnestness, that there is a middle ground of liability in a case like this between ordinary negligence and wilfulness, such as in some cases has been termed "gross negligence," "recklessness," or "wantonness"; and that upon this theory appellee is entitled to recover, notwithstanding he may have been guilty of contributory negligence. In support of this, they cite authorities, among them some of the earlier cases in this State. We do not say that there are not degrees in negligence recognized in the books, and we think there are cases where the distinction is important; such as cases of bailments. But in a case like this, where contributory negligence may be a defence, we think that such defence is not controlled by the degree of negligence that may be charged upon the company, whether slight, ordinary or gross. Negligence, whether slight, ordinary or gross, is still negligence; and when the company is charged with nothing but negligence, contributory negligence is a defence. *Tonawanda R. R. Co.* v. *Munger,* 5 Denio, 255.

That contributory negligence may cease to be a defence, there must be something in the conduct of the party charged more positive and aggressive in its nature than negligence, or the simple omission of duty. Negligence is negative in its nature, implying the omission of duty, and excludes the idea of wilfulness. Whart. Neg., section 300. When wilfulness is an element in the conduct of the party charged, the case ceases to be one of negligence, and contributory negligence ceases to be a defence.

If there is a middle ground of liability between ordinary negligence and wilfulness, where and what is it? If we grant that the terms "gross negligence," "recklessness," and the inapt word "wantonness," express different degrees of negligence,

still the charge is one of negligence, and is lacking in the elements of wilfulness and purpose. And if it be admitted that ordinary negligence on the part of the plaintiff, contributing to the injury, will defeat a recovery based upon the charge of ordinary negligence on the part of the defendant, what shall be said when both plaintiff and defendant have been guilty of gross negligence, recklessness, or wantonness?

It seems to us that to adopt the theory of such middle ground of liability, is to adopt the doctrine of comparative negligence, as held in Illinois and one or two of the other States, which has never been adopted in this State, and the adoption of which would be a reversal of the whole line of our decisions upon the doctrine of contributory negligence. Under the rule of comparative negligence, the verdict is given to the party guilty of the least negligence. If the negligence of the parties, whether slight, ordinary, or gross, is equal, there can be no recovery, and hence, when the plaintiff is guilty of gross negligence, he can not recover, unless the injury is wilfully inflicted. *Chicago, etc., R. R. Co.* v. *Lee*, 68 Ill. 576; *Illinois Central R. R. Co.* v. *Hetherington*, 83 Ill. 510.

The authorities are not entirely harmonious in the use of terms, but upon a careful examination the difference will be found to consist more in what has been said by the judge delivering the opinion than in what has been decided. The terms " recklessly," " with gross negligence," and " wantonly " have been used in some cases, and in some of the earlier cases in this court, as though they might import something more than negligence. In some of the cases they were evidently used as synonymous with wilfulness. In the later and better considered cases in this court, however, these terms have been held to mean less than wilfulness, and nothing more than negligence in a case of this character.

In the case of *Pennsylvania R. R. Co.* v. *Sinclair*, 62 Ind. 301, it was charged that the train was run at a reckless and grossly dangerous speed. It was contended that the

evidence sustained the charge, and that the company was liable notwithstanding the plaintiff may have been guilty of contributory negligence. In the opinion of the court it is said: "There has been of late a very strong tendency of judicial opinion, adverse to the distinction between gross negligence and ordinary negligence, in the sense in which those terms are used in the class of cases to which we have above referred, and with that tendency the doctrine has been gaining ground in this, and at least some of the other States, that something more than mere negligence, however gross, must be shown, to enable a party to recover for an injury, when he has been guilty of contributory negligence; that, in such a case, something more aggressive than mere negligence must be alleged and proved. * * * When, therefore, the injury complained of is a negligent one merely, contributory negligence is a good defence to the action. It is only when the injury sued for is alleged, either in terms or in substance, to have been wilfully or purposely committed, that contributory negligence ceases to be a defence. * * * We are aware that there is a line of decisions establishing what is known as the English doctrine, to the effect that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, if the defendant, after becoming aware of the plaintiff's danger, could, by the exercise of ordinary care and diligence, have avoided injuring him. * * * But we do not feel justified in disturbing what has been long accepted in this State as the better doctrine, after much discussion and consideration."

In the case of *Indianapolis, etc., R. R. Co.* v. *McClaren,* 62 Ind. 566, where wilfulness and gross negligence were charged, this court, in discussing the evidence, said: "We discard the term gross negligence; wilfully and purposely are preferable, as they have a more definite meaning, and the act done must come within that meaning. * * * The railroad company may be liable for the wilful acts of its employees; * * and their conduct in the management of the train,

where injury results, may be given in evidence as tending to show that the injury was wilfully and purposely inflicted."

In the case of *Cincinnati, etc., R. R. Co.* v. *Eaton*, 53 Ind. 307, in discussing the sufficiency of the complaint, this court, per Worden, C. J., said: "If the paragraph had alleged that the injury was committed wilfully and purposely, the allegation that the deceased was guilty of no negligence would have been unnecessary; for if he had been wrongfully or negligently upon the track, that would not have justified the defendant in wilfully and purposely running upon him. * * But the allegations of the paragraph are not equivalent to such charge. It is alleged, that the train was run 'recklessly and with gross negligence,' and that, by means of said 'recklessness and gross negligence,' the engine ran against the deceased. This does not imply that the injury was inflicted either purposely or wilfully. . The definitions of the word recklessness, as given by Worcester, are heedlessness, carelessness, negligence. In the case of *The Lafayette, etc., R. R. Co.* v. *Adams*, 26 Ind. 76, it seems to us that the signification of the word recklessness was extended somewhat beyond its legitimate import."

In the case of *Lafayette, etc., R. R. Co.* v. *Huffman*, 28 Ind. 287, this court said: "The complaint is fatally defective. After admitting facts which show negligence of the plaintiff, contributing to the injury, it charges that the defendant, in a wanton and careless manner, ran said locomotive, etc. The word 'wanton' does not mean wilful. It is defined by Webster as follows: 'Wandering or roving in gayety or sport;' 'licentious,' 'lewd;' 'extravagant,' etc. The word adds no force to the charge that the act was done in a careless manner." See, also, *Jeffersonville, etc., R. R. Co.* v. *Bowen*, 40 Ind. 545; *Evansville, etc., R. R. Co.* v. *Wolf*, 59 Ind. 89; *Bellefontaine R. R. Co.* v. *Hunter, supra; Jeffersonville, etc., R. R. Co.* v. *Bowen*, 49 Ind. 154; *Johnson* v. *Boston, etc., R. R.*, 125 Mass. 75; *Heil* v. *Glanding*, 42 Pa. St. 493; *Gillis* v. *Pennsylvania*

The Terre Haute and Indianapolis Railroad Company v. Graham.

*R. R. Co.*, 59 Pa. St. 129; *Jeffersonville, etc., R. R. Co.* v. *Goldsmith, supra; Illinois Central R. R. Co.* v. *Godfrey*, 71 Ill. 500; *Peoria Bridge Ass'n* v. *Loomis*, 20 Ill. 235.

Applying the proper rule to the case in hearing, we think the evidence does not make a case against the appellant on the charge in the second and third paragraphs of the complaint. There is no evidence which proves, or tends to prove, that the collision was the result of wilfulness on the part of appellant's servants. The presumption is that an able-bodied man, trespassing upon the company's track, will leave it before coming in collision with a moving train. Upon this presumption those in charge of the train have a right to act, at least until it is apparent that on account of some infirmity the trespasser is not able to look after his own safety. *Terre Haute, etc., R. R. Co.* v. *Graham*, 46 Ind. 239. See, also, *Telfer* v. *Northern R. R. Co.*, 30 N. J. 188.

In this case the engineer did not see appellee until the train was within 300 feet of him. It could not have been stopped in less than three times that distance. It was running on a down grade, at near thirty miles an hour. The engineer had but a few seconds in which to observe, think or act. At the speed the train was running, it passed over the 300 feet in about six seconds. There is nothing in the statement of the engineer concerning his observation of appellee in the few seconds preceding the collision, which indicates bad faith or wilfulness. The alarm whistle was sounded, the bell rung, brakes applied, and steam reversed at about the time of the collision, if not before; and the train was stopped as soon as it was possible to do so. Immediately after the train was stopped the engineer, conductor, and other employees upon the train, hastened to appellee, inquired after his injuries, put him upon the train and took him back to Greencastle, where he lived.

If "gross negligence" is chargeable to any one, it is to appellee; he knew he was walking upon dangerous ground. The track itself was a warning to him. He saw the people at the

depot waiting for a train, heard the whistle at the depot, and yet continued upon the track, taking no precautions for his safety. While others near him, and still others much farther away from the train, both saw and heard it, he continued upon the track, in ignorance of its approach.

If the doctrine of the Illinois cases should be applied to the facts in this case, the gross negligence of appellee would defeat his action, conceding that appellant was also guilty of gross negligence. *Illinois Central R. R. Co.* v. *Hetherington, supra.*

The twelfth instruction given by the court is as follows: "If the jury find that the plaintiff was walking along the railroad track of the defendant, that he knew it was about train time, and could have seen the train approaching by the exercise of ordinary diligence, and that he did not look for its approach, but remained upon the track until the train approached and struck him, then his own negligence contributed to the injury which he received, and he can not recover unless the injury was produced by the gross negligence of those managing the train; that is, unless it was wilfully, wantonly and recklessly done."

This instruction, we think, does not state the law correctly. The jury are told that the company is liable if the injury was wilfully, wantonly or recklessly inflicted, notwithstanding appellee may have been guilty of contributory negligence. We have seen that the words *reckless* and *wanton* do not mean wilful, and express nothing more than negligence. This instruction seems to have been based upon the theory that there is a middle ground of liability between ordinary negligence and wilfulness, upon which appellee might recover, notwithstanding his negligence, and so the jury doubtless understood it.

It follows from what we have said that the court below erred in overruling appellant's motion for a new trial. As the judgment must be reversed on account of this error, it will not be necessary for us to consider other alleged errors in the giving and refusal of instructions.

The judgment is reversed, at the costs of appellee, with instructions to the court below to sustain the motion for a new trial.

Filed May 28, 1883. Petition for a rehearing overruled May 9, 1884.