Filed June 26, 1886.

---

No. 12,197.

## THE FIRST NATIONAL BANK OF INDIANAPOLIS v. ROOT ET AL.

PLEADING.—*Construction of.*—A pleading must proceed upon some single, definite theory, which must be determined from the general scope and character of the pleading.

PLEDGE.—*Contract.*—*Collateral Security.*—*Withdrawal on Reduction of Debt.*—*Transfer of Collaterals.*—Where bonds and stocks are pledged as collateral

security, under a contract stipulating that in the event of the reduction of the indebtedness, the pledgeor should be entitled to select and with-draw from the securities so pledged an amount equal to the reduction, one to whom the pledgeor has sold and transferred a part of such securities can maintain his right to them, as against the pledgee, where it is shown that prior to such transfer the pledgeor had paid, or caused to be paid, on such indebtedness, a sum in excess of the value of the securities so transferred.

'SAME.—*Consideration.*—In such case, the pledgor can sell and transfer, either with or without consideration, the securities which he had the right under the contract to withdraw.

'SAME.—*What will Constitute Reductions of Indebtedness.*—In such case, reductions of the indebtedness, effected in part by means of sales of property mortgaged to secure the indebtedness, rents of real estate the possession of which had been voluntarily delivered to the pledgee, sales of property on execution, etc., are reductions within the meaning of the contract.

From the Marion Superior Court.

*S. Claypool, W. A. Ketcham* and *H. J. Milligan,* for appellant.

*F. Winter,* for appellees.

MITCHELL, J.—The First National Bank of Indianapolis brought an action against Deloss and Jerome B. Root, composing the firm of D. Root & Co. From the averments in the complaint it appears that Deloss Root and D. Root & Co., being largely indebted to the bank, pledged, as collateral security, certain bonds and stocks, taking at the time as evidence of the terms upon which the pledge was made, a paper writing signed by the cashier of the bank, of the tenor following:

" Received of D. Root & Co. the following named stocks and bonds, which we are to hold as collateral security for any indebtedness which said D. Root & Co., or D. Root, may owe to the First National Bank. Should said D. Root, or D. Root & Co., reduce their indebtedness to said bank, they shall be entitled to select from the securities an amount equal to the reduction so made. The securities so left shall be

strictly held as collateral, and shall in no case be sold until the real and personal property of said D. Root and D. Root & Co., shall have been exhausted."

Following the above is a schedule of the stocks and bonds, referred to in the writing, with a statement of their face value, aggregating $82,000. Included in the schedule is the following item:

"Certificate No. 34, belonging to D. Root, 200 shares of the Franklin Fire Insurance Co., paid up in full, $5,000."

All of the stocks and bonds, except the certificate above mentioned, had been withdrawn or sold, and the proceeds applied on the indebtedness to secure which it was pledged. There remained due of this debt to the bank $25,736.60, which at the time the complaint was filed was in judgment. The complaint charged that the amount of property withdrawn exceeded the amount of reduction of the debt, and that the Roots, at the time the suit was commenced, were possessed of no real or personal property which was subject to execution. The relief prayed was, that the lien of the bank on the stock remaining in its possession might be foreclosed, that a sale might be ordered, and the proceeds applied on the judgment against Root & Co.

Kate H. Root filed an intervening petition, upon which she was admitted as a party defendant. By a cross complaint, in which the bank, Deloss and Jerome B. Root were named as defendants, she exhibited, in substance, the following facts: That the individual liability of Deloss Root to the bank grew out of the endorsement of a note by him for certain parties, and amounted at the time the pledge was made to $7,000. It was averred that substantially all of the property which had been pledged was the individual property of Deloss Root, and that all the proceeds of that which had been sold or withdrawn had been applied exclusively in reduction of the debt of D. Root & Co. Deloss Root, since the pledging, had paid out of his individual funds and property, and had procured to be paid, on account, and in reduction of the

indebtedness, the sum of $7,500, that being more than the full amount of all his individual liability to the bank. The claim was, that he thereby became entitled to withdraw the stock of the Franklin Insurance Company theretofore pledged by him, and that after his right to withdraw had accrued, he sold, assigned and transferred the stock in question to the cross complainant, Kate H. Root. In her cross complaint she alleges a previous demand for the stock, and prays that it be adjudged her property, and that the bank may be required to transfer it, and account to her for the dividends received since demand made by her.

The joint answers of Deloss, Jerome B. and Kate H. Root, need not be noticed.

The second paragraph presented a state of facts not materially different from those contained in the cross complaint.

Separate demurrers were overruled to the special answer and to the cross complaint.

The plaintiff's special answer to the cross complaint was, in substance, that Kate H. was the wife of Deloss Root, and knew that the latter was indebted to the bank in the sum of $30,000 at the time she received the pretended transfer of the stock from her husband; that the transfer was without consideration, and was made for the purpose of defrauding the creditors of Deloss Root.

A demurrer was sustained to this answer. The cause, having been put at issue, was tried by the court. A special finding of facts having been duly made, conclusions of law were stated thereon favorable to the cross complainant.

On behalf of the appellant, it is contended that the answer, in which Mrs. Root joined, as well as her cross complaint—in which substantially the same facts are alleged—were bad, and that in overruling demurrers to them, the court erred. The argument is, that the bank having recovered a judgment against D. Root & Co., which remained unsatisfied, it had the right, without regard to and independent of the contract under which the stock was delivered in pledge,

to maintain a bill in equity for the purpose of subjecting it to sale.   This position assumed, it is thence insisted that, because it does not appear that Mrs. Root paid a valuable consideration for the transfer of the stock in controversy, and because she did not, as it is argued, acquire an equity therein superior to that of the bank, her cross complaint failed to state facts which entitled her to any relief.   It is contended further, that under the contract, set out in the complaint and referred to above, the plaintiff's right to the stock is complete, notwithstanding the facts averred in the cross complaint.

The general scope of the complaint plainly shows that the purpose of the proceeding was to enforce a lien created by the contract under which the stock was pledged.   The frame of the complaint clearly indicates that it was not the intention to state a cause of action outside of the contract of pledging.   All the pleadings and the issues in the case had reference to the rights of the parties as they might ultimately be determined under this contract.   This court has often decided that every pleading must proceed upon some single, definite theory, which must be determined by its general scope and character.   To this theory, so determined, the party must be held through all the stages of the case, and upon it he must stand or fall.   The reasons for the rule have been so well stated that to repeat them would add nothing to its force.   *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195, and cases cited; *Mescall* v. *Tully*, 91 Ind. 96, and cases cited.

Moreover, if the purpose of the proceeding instituted by the bank was nothing more than to subject the stock in controversy to sale, so that the proceeds might be applied upon the judgment, without regard to the contract, resort to a court of equity was altogether unnecessary.   If the proceeding was not to enforce the rights of the bank under the contract, then the complaint was bad, because the bank had an adequate remedy at law without invoking the aid of a court of equity.   Having recovered a judgment against D. Root & Co., it was only necessary that an ordinary execution should

have been sued out in order that stock belonging to Deloss Root, one of the firm, might have been subjected to sale.

The statute makes specific provision for the sale on execution of stock in an incorporated company. Section 723, R. S. 1881. Outside of the contract, which is set up in the bill, nothing appeared making a resort to a court of equity either proper or necessary. Nothing appeared in the record anywhere which adapts the case to a proceeding to set aside property fraudulently conveyed—if a proceeding of that character is applicable to sales of personal property—or to reach property by proceedings supplementary to execution. It nowhere appeared but that Deloss Root had, at the time of the sale and transfer of the stock to his wife, abundant other property subject to execution to satisfy the plaintiff's judgment, or that the plaintiff had any specific lien upon the stock other than that created by the contract set out. *Green* v. *Kimble*, 6 Blackf. 552; *Smith* v. *Railroad Co.*, 99 U. S. 398. The rights of the parties must, therefore, be determined upon the basis that the contract referred to defines the appellant's claim upon the stock, and that the right thus secured was the only subject of controversy.

The contract stipulated that in the event of a reduction by Deloss Root, or D. Root & Co., of their indebtedness, they should be entitled to select from the securities pledged an amount equal to the reduction. Both the answer and cross complaint averred that Deloss Root paid, or caused to be paid, in money and property, a sum in excess of the total amount of his indebtedness, and in excess of the value of the stock. This being admitted, he became entitled to withdraw such of the stock, equal in amount to the reduction effected, as he should select. Having acquired this right, it was his privilege, so far as any contractual obligation to the bank was concerned, to sell and transfer the stock which he had the right to withdraw, either with or without a valuable consideration. The conclusion follows, that the averment that after so reducing his indebtedness he sold and trans-

ferred the stock in dispute to Kate H. Root, was sufficient to show her right to such stock without averring that the transfer was upon a valuable consideration. For the same reason, it follows that the plaintiff's answer to the cross complaint and the reply to the special answer, both of which set up affirmatively that the transfer to Kate H. Root was without consideration, were insufficient. There was no error in the rulings of the court in respect to the pleadings.

Upon the issues made the court found the facts specially, and stated its conclusions of law thereon. It was found that the stock in controversy was of the value of $4,000, and that before the commencement of the suit it had been sold and assigned for a valuable consideration, by Deloss to Kate H. Root. It was also found that the debt, for which the stock had been pledged, had been reduced in a sum largely in excess of the value of the stock in controversy. Some of the reduction resulted from voluntary payments made by Deloss Root, some from rents of property, the possession of which had been delivered to the bank. Still other reductions of the debt were the result of sales of real estate, some of which had been voluntarily mortgaged by Deloss Root to secure the indebtedness for which the stock was pledged; while other parcels were sold on executions issued on a judgment which had been taken against Deloss Root, and which has since been satisfied.

It is claimed that the sums voluntarily paid are not equal in amount to the value of the stock, and that reductions of the debt effected by means of sales of property, rent of real estate, etc., are not such reductions as are contemplated by the contract.

The only condition to the right to withdraw securities, which the contract imposed, was, that the debt or debts for which they were held as collateral security should be reduced. That the reduction resulted from sales of property was as much a reduction within the terms of the contract as if it had been accomplished by voluntary payment. In proportion as

the debt was reduced securities might be withdrawn. This was the contract. Some of the sales made were upon mortgages voluntarily given to secure the debts for which the stock was held in pledge.

The money arising from the sale of the mortgaged property, as well as that which was received on execution sales, and for rents of the mortgaged property, went in reduction of the debt.

This was as effectual to reduce the debt to the extent of the money received by the bank, as if Deloss Root had himself sold the property, or collected the rents and turned the money over to be applied on the debt.

We need not determine whether a debt may be paid by the creditor receiving property from the debtor. *Hart* v. *Crawford*, 41 Ind. 197. The bank did not receive property. What it received was money arising from the sale of its debtor's property. This was of course payment *pro tanto*.

The special findings, moreover, enumerate payments voluntarily made, in excess of $4,000, the ascertained value of the stock in controversy. With this additional fact in view, the right of Deloss Root to withdraw the stock at the time of its transfer to Mrs. Root would seem, in any aspect of the case, to be beyond controversy.

There was no error.

The judgment is affirmed, with costs.

