Palmer *v.* The Chicago, St. Louis and Pittsburgh Railroad Company.

No. 12,817.

## PALMER *v.* THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY.

DEMURRER TO EVIDENCE.—*Truth of Facts.—Inferences.—Practice.*—In considering a demurrer to evidence, the court is bound to accept as true all the facts which the evidence tends to prove, and, as against the demurring party, to draw from the evidence all such reasonable inferences as a jury might draw.

SAME.—*Conflicting Evidence.— What Can be Considered.*—If there is a conflict in the evidence, then only such as is favorable to the party against whom the demurrer is directed can be considered, and that which is favorable to the demurring party is deemed to be withdrawn.

SAME.—*Question Presented.—Bill of Exceptions.*—Where evidence is incorporated, as it must be, in the demurrer, the only question presented is the sufficiency of the evidence to sustain a right of action, and exceptions to rulings in rejecting or receiving evidence are not presented, a bill of exceptions being necessary for that purpose.

NEGLIGENCE.—*Railroad.— Trespasser.*—No action will lie against a railroad company for causing the death of a trespasser upon its track unless the act of its employees was wilful.

SAME.—*Presumption that Person will Leave Track.*—An engineer of a moving train has a right to presume, until the last moment, that a person walking on the railroad track will leave it in time to avert danger.

SAME.— *Wilfulness.—Constructive Intent to Inflict Injury.*—To constitute wilfulness, in a legal sense, it is not necessary that there should be a formed and direct intention to kill or wound any particular person; but the intent may be a constructive or an implied one.

SAME.—*Reckless Disregard of Consequences.* —A reckless disregard of consequences may be so great as to imply a willingness to inflict an injury, and as to entitle a trespasser to recover, although there is no actual intent to harm him.

SAME.—*Person Unconsciously in Peril.--Duty to Stop Train.*—If two men are seen on the track in front of a train, one risking his own safety in an effort to signal the foremost man to leave the track, the engineer is guilty of a wilful wrong if, seeing the signals, he fails to use ordinary care to stop the train ; but it is otherwise if he does not see the signals.

SAME.—*Rate of Speed.— When Not Material.*—As applicable to an injury to a trespasser, the rate of speed at which the train was run is not material, unless there be something making it evidence of an intentional or wilful act.

Palmer *v.* The Chicago, St. Louis and Pittsburgh Railroad Company.

SAME.— *Use of Track by Public.*— *License.*— Where a railroad company, either expressly or by clear implication, licenses the public to use its track in a city, town or village, it can not treat one who avails himself of the license as a trespasser.

From the Lake Circuit Court.

*M. Wood* and *T. J. Wood,* for appellant.

*N. O. Ross,* for appellee.

ELLIOTT, J.—There is evidence showing these facts: James W. Palmer, seventeen years of age, was run over and killed by one of the appellee's trains while walking along its track not far from a highway crossing in the village of Leroy. His hearing was so defective that he could not hear the rumble of an approaching train if very far off, but he could hear the whistle of the locomotive. The father of the young man said, in the course of his testimony: " I looked up on top of the grade and saw this train coming. James was walking right to the tank. I just ran across the track, between the main track and the switch, and I took off my hat and signalled to him to stop. He never saw the train. I don't know that the engineer saw me. I ran to within sixty-six feet of him, and it was to about twenty-four rods of where they killed the boy. When James went on the track he looked west and he looked east, the same as common. He expected the eastern freight train, likely, going west, instead of this eastern extra passenger. The train was about eighty rods from me when I made the signals. I saw the boy was not looking back. I took off my hat and swung it for a signal. I knew what the signals were as well as they did on a railroad track ; I have been on it long enough. I ran on, swinging my hat, till they knocked me down. I was tolerably close to the boy myself. I ran ahead, waving my hat. I aimed to run ahead of the boy so he would see me and get off the track. I ran right across the main track between the switch. I ran towards the boy between the tracks. I ran within sixty-six feet of the boy, and it was twenty-four rods

to where he was struck from where he stepped on the track. The engineer was on the south side. When the train passed the switch, right where I put up the switch-light, the engineer yelled out; that was within six or eight or ten rods of the house. By 'yelled out' I mean he whistled. There was no slackening of speed that I could see. When they whistled they were within about thirty rods of the boy. The train was running through the village at pretty close to forty miles an hour. It knocked me from the track. The village has about seventy-five inhabitants. There are two stores on the south side of the track and a hay barn on the north side. It (the train) threw me on the ground. It was, I think, the wind of the train that did it."

The mother of the deceased testified that she was standing in a "shanty used as a cook-room;" that she saw her husband running and waving his hat, and that he hallooed so loud that she heard him above the noise of the train.

The engineer of the train testified that he saw the deceased on the track; that he whistled several times to warn him; that he expected that he would leave the track, and that he did not know that the deceased was deaf. The engineer also testified: " I was at the window looking out, and had been most, if not the entire, time after leaving Crown Point. I saw two persons on the track; one was some distance behind the other, and both were going in the same direction the train was going. The hindmost one, or the one nearest the train, got off the track after I sounded the whistle. I could not tell whether either of them was running or not; if he was, I did not discover the fact. I did not see either of them wave a hat."

The trial court sustained the appellee's demurrer to the evidence.

It is important, at the outset, to state the principles which the court must obey in considering a demurrer to evidence, and these are:

*First.* The court is bound to accept as true all the facts

which the evidence tends to prove, and, as against the party demurring, to draw from the evidence all such reasonable inferences as a jury might draw. *Willcuts* v. *Northwestern M. L. Ins. Co.*, 81 Ind. 300, and cases cited; *Hagenbuck* v. *McClaskey*, 81 Ind. 577; *Radcliff* v. *Radford*, 96 Ind. 482; *McLean* v. *Equitable L. Assurance Soc.*, 100 Ind. 127 (50 Am. R. 779); *North British, etc., Ins. Co.* v. *Crutchfield*, 108 Ind. 518.

*Second.* If there is a conflict in the evidence, then only such evidence as is favorable to the party against whom the demurrer is directed can be considered, and that which is favorable to the demurring party is deemed to be withdrawn. *Fritz* v. *Clark*, 80 Ind. 591; *Ruddell* v. *Tyner*, 87 Ind. 529; *Adams* v. *Slate*, 87 Ind. 573; *McLean* v. *Equitable L. Assurance Soc.*, *supra;* *Lake Shore, etc., R. W. Co.* v. *Foster,* 104 Ind. 293 (54 Am. R. 319).

The question, therefore, as the record presents it to us, is this: Does the evidence, considering only that which is favorable to the appellant, and yielding to him the full benefit of all the reasonable inferences for which it supplies a foundation, entitle him to a recovery on the cause of action stated in the complaint?

We have restricted our statement of the question by saying that the evidence must be such as will support the cause of action declared on, because, even on a demurrer to the evidence, it is only on that cause of action that there can be a recovery.

Under the firmly settled rule, the deceased must be regarded as having been a trespasser on the track of the railroad company at the time of his death. *Louisville, etc., R. W. Co.* v. *Ader*, 110 Ind. 376; *Belt R. R. Co.* v. *Mann*, 107 Ind. 89; *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51; *Louisville, etc., R. W. Co.* v. *Schmidt*, 106 Ind. 73; *Chicago, etc., R. R. Co.* v. *Hedges*, 105 Ind. 398; *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286 (48 Am. R. 719); *Indianapolis, etc., R. R. Co.* v. *McClaren*, 62 Ind. 566.

As he was a trespasser, no action will lie against the corporation for causing his death unless the act of its employees. was wilful. A trespasser can not maintain an action where the tort of the defendant is nothing more than the omission to exercise care. *Terre Haute, etc., R. R. Co.* v. *Graham, supra ; Pennsylvania Co.* v. *Sinclair,* 62 Ind. 301 (30 Am. R. 185) ; Beach Cont. Neg., pp. 205, 208, 209.

If, then, this action can be maintained it must be on the ground that the wrongful acts of the employees of the appellee were wilful. We regard the decision in *Terre Haute, etc., R. R. Co.* v. *Graham, supra,* as correctly declaring the general rule upon this subject, and we can not depart from it. *Louisville, etc., R. W. Co.* v. *Ader, supra ; Belt R. R. Co.* v. *Mann, supra; Louisville, etc., R. W. Co.* v. *Bryan, supra;* Beach Cont. Neg., p. 209.

We have no doubt that the case of *Terre Haute, etc., R. R. Co.* v. *Graham, supra,* is right in asserting that an engineer of a moving train has a right to presume, until the last moment, that a person walking on the track will leave it in time to avert danger. Nor do we doubt that these general rules were correctly applied in that case. *Pennsylvania Co.* v. *Sinclair, supra ; Indianapolis, etc., R. R. Co.* v. *McClaren, supra; Donaldson* v. *Milwaukee, etc., R. W. Co.,* 21 Minn. 293 ; *Gaynor* v. *Old Colony, etc., R. W. Co.,* 100 Mass. 208 ; *Morrissey* v. *Eastern R. R. Co.,* 126 Mass. 377 (30 Am. R. 686) ; *Mason* v. *Missouri Pacific R. W. Co.,* 27 Kan. 83 (41 Am. R. 405) ; *Rothe* v. *Milwaukee, etc., R. R. Co.,* 21 Wis. 256 ; *Harty* v. *Central R. R. Co.,* 42 N. Y. 468 ; *Lake Shore, etc., R. R. Co.* v. *Miller,* 25 Mich. 274.

But, while we fully affirm the doctrine of the case referred to, we can not regard it as decisive of this case upon the theory on which the appellant's argument proceeds.

It is our judgment that there may be a wilful act, in a legal sense, without a formed and direct intention to kill or wound any particular person. There may, in other words, be a constructive or an implied intent without an express one. To·

use an illustration supplied by one of the members of the court in consultation, suppose that a warning signal is given an engineer, clearly conveying to his mind that there is danger ahead, that he sees the signal of warning, and, regardless of the warning thus given, he keeps his engine in motion and runs upon a bridge weakened by flood or fire, would there not be wilfulness in a legal sense, although there was nothing more than a wilful disregard of danger? Or, to take another illustration, suppose an engineer sees two men on the track, and sees one of them making signals to the other to leave it, would it not be wilfulness to run upon the man to whom the signals were made without any effort to check the train? Of course, without such signals, or something of a warning nature to attract the attention of the engineer, he would have a right to presume that the man would leave the track; but to keep on in disregard of signals of warning seen by him is a very different thing from proceeding where there is nothing to arouse attention and create a belief that there is a reason why the train should be brought to a halt.

Once again, to illustrate, suppose a man is on the track, in reality fastened there, but in appearance at full liberty to leave it at will, this appearance would justify the engineer in presuming that he would step from it in time to escape danger, and there would not be wilfulness in running upon him; but if the fact be added to this supposed case that a third person was seen by the engineer endeavoring to warn the man off the track, or signalling for the train to stop, would it not, in legal contemplation, be a wilful act to keep the train in motion without any effort at all to bring it to a stop? It seems to us that these examples show that there may be cases where there would be wilfulness although there was no direct or positive intention or design to inflict injury.

The authorities, from the earliest years of the common law, recognize the rule that there may be a wilful wrong without a direct design to do harm. This principle has been ap-

plied to furious driving, to collisions between vessels, to the taking of unruly animals into crowds, to carelessly laying out poison for rats, to want of caution towards drunken persons and to the careless casting of logs and the like upon highways. 1 Hale Pleas of the Crown (Am. ed.), 475, and authorities n. 4; 4 Blackst. Com. 182. Dr. Wharton gives full recognition to this principle and shows its application to railroads. Wharton Homicide, sections 80, 87, 94, 155. Mr. Bishop very fully and ably discusses the question and cites many authorities. In the course of his discussion he says: "There is little distinction, except in degree, between a positive will to do wrong and an indifference whether wrong is done or not. Therefore carelessness is criminal; and, within limits, supplies the place of the direct criminal intent." 1 Bishop Crim. Law, chapter 20. In another place this author says: "If a man neglects obvious means to learn what will be the probable consequences of his act, and so proceeds rashly, the doctrine of carelessness already discussed applies to the case, and he is not excused." 1 Bishop Crim. Law, section 324. These authorities declare and illustrate a fundamental principle of the criminal law, long established and long maintained without dissent, and we can not affirm that where the question is one of mere civil liability a more lenient rule prevails in favor of the wrongdoer. Nor do the decided cases justify the conclusion that a more favorable rule prevails in civil cases.

Judge Cooley thus states the general rule: "Where the conduct of the defendant is wanton and wilful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts irrespective of the fault which placed the plaintiff in the way of such injury. The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or reck-

Palmer *v.* The Chicago, St. Louis and Pittsburgh Railroad Company.

lessly injuring him. Even the criminal is not out of the protection of the law." Cooley Torts, 674.

Mr. Beach says: "It is a general rule that when the defendant's negligence is wilful, contributory negligence is not a defence, and, accordingly, it is held that a mere technical trespass is not such an offence as to deprive the trespasser of his right to recover damages for an injury which he suffers through the wilful negligence of another." Beach Con. Neg. 53. At another place this writer shows that the term "wilful negligence" is an inapt one, and takes substantially the same view as that adopted in *Terre Haute, etc., R. R. Co.* v. *Graham, supra,* saying that wilful negligence means a "failure to perform a manifest duty, in reckless disregard of the consequences as affecting the life or property of another." Beach Con. Neg. 67.

The general principle asserted by the text-writers to whom we have referred is thus given expression in a work on railways: "The company has no right to inflict wanton injury on persons who are unlawfully on its location; and where human life and limb are concerned, that injury may well be treated as wanton, subjecting the company to damages, when, although able to do so, they neglect to arrest the engine which they have good reason to believe will, without an effort to stop it, result in injury to the wrongdoer. A wrongdoer is not necessarily an outlaw as to his property; still less as to his person." Pierce Railroads, 330.

It is probably true that the word wanton does not correctly express the meaning of the cases, but taken in connection with the context there can be no doubt as to the author's meaning, and that his statement of the rule is well supported by the authorities.

In *Donahoe* v. *Wabash, etc., R. W. Co.,* 83 Mo. 543, the principle asserted by the authors to whom we have referred was enforced in a case not unlike the present. In that case a child wandered upon the track and was killed. It was said

by the mother, in the course of her testimony, that " I made for my child as hard as I could run, with hands up and screaming. I ran as fast as I could." The company was held liable, because there was a recklessness that constituted something more than mere negligence. Our own cases recognize the doctrine that a reckless disregard of consequences may be so great as to imply a willingness to inflict an injury.

In *Pennsylvania Co.* v. *Sinclair, supra,* it was said: " Where an intention to commit the injury exists, whether that intention be actual or constructive only, the wrongful act ceases to be a merely negligent injury, and becomes one of violence or aggression." This is a recognition of the doctrine of the ancient authorities to which we have referred, for they assert the distinction between an actual and an implied or constructive intention.

" To constitute a wilful injury," said the court in *Louisville, etc., R. W. Co.* v. *Bryan, supra,* " the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of."

In *Belt R. R. Co.* v. *Mann, supra,* it was said : " It is beyond question that to entitle one to recover for an injury to which his own negligence may have contributed, the injurious act or omission must have been purposely and intentionally committed, with a design to produce injury, or it must have been so committed under such circumstances as that its natural and reasonable consequence would be to produce injury to others. There must have been either an actual or constructive intent to commit the injury." Similar language is used in *Louisville, etc., R. W. Co.* v. *Ader, supra.*

These last cases distinctly recognize the rule that direct and positive intent is not always requisite to constitute a wilful act. If it were not so, what is said about a reckless disregard of probable consequences and a constructive intention would be meaningless.

In *Pennsylvania Company v. Sinclair, supra,* NIBLACK, J., speaking for the court, said: "As a matter of evidence, proof that the misconduct of the defendant was such as to evince an utter disregard of consequences, so as to imply a willingness to inflict the injury complained of, may tend to establish wilfulness on the part of the defendant." *Cincinnati, etc., R. R. Co.* v. *Eaton,* 53 Ind. 307.

The general subject was thoroughly discussed in *Carter* v. *Louisville, etc., R. W. Co.,* 98 Ind. 552, and it was said that a trespasser is not an outlaw, and that a reckless aggression is not an act of mere negligence, but is an act "evincing a wanton indifference to consequences and willingness to inflict injury."

In *Indianapolis, etc., R. W. Co.* v. *McBrown,* 46 Ind. 229, horses were pursued by a train, driven into a deep cut and forced to leap a trestle-work, and the court said: "The pursuing them into the cut and forcing them to attempt a dangerous leap manifested a reckless disregard of human life, and the safety of the property of the citizen. The allegations of the complaint make out a plain and clear case of wilful negligence. The injury was intentionally and wilfully committed."

It is probably true that the language quoted is subject to verbal criticism, in this, that the term "wilful negligence" is not an appropriate one, but this misuse of words does not materially affect the decision.

We think it clear, from these cases, that it may be safely affirmed that it has never been denied by this court that there may be a wrong so great as to entitle a trespasser to recover, although there may be no direct or actual intent to inflict an injury.

The decision in *Terre Haute, etc., R. R. Co.* v. *Graham, supra,* does not decide that a direct or positive intention is necessary to constitute wilfulness, and nothing we here decide conflicts with that decision.

We agree with appellant's counsel, that if two men are

seen on a track in front of the train, and one of them risks his safety in the effort to signal the foremost man to leave the track, the engineer who sees the signal is guilty of a wilful wrong if he does not use ordinary care to stop the train. Pushing on in utter disregard of such warning signals is something more than negligence; it is wilfulness. It passes beyond a mere omission of duty and becomes a positive wrong. The fact that signals indicating peril are given and are seen by the engineer plainly distinguishes the case from the class of cases represented by the *Terre Haute, etc., R. R. Co.* v. *Graham, supra.* Proceeding in defiance of such signals creates the constructive intention of which our cases speak, and makes the conduct of the wrongdoer wilful. Such an act is not simply negligence; it is a wrong implying a willingness to inflict an injury.

While we agree with appellant's counsel upon the legal proposition as we have stated it, we can not agree in their inference of fact, for we can not assent to the conclusion that a jury might have inferred that the engineer saw the signals given by the father of the deceased. In the face of his positive statement that he did not see them this would be a forced and violent inference, and such inferences are forbidden. *Lake Shore, etc., R. W. Co.* v. *Foster, supra.*

There is no conflict of evidence, for the father testifies that he does not know whether the engineer saw his signals or not, and the engineer, speaking as the appellant's witness, positively testifies that he did not see them. We do not believe that the appellant has a right to ask the court to discredit his own witness in a case like this, where there is really no contradiction. If the appellant had not introduced the testimony of the engineer it might, perhaps, have been inferred that the engineer did see the signals, but the testimony was adduced by the appellant and must prevail because it is not contradicted. Where there is no contradictory evidence, and the testimony is not plainly improbable, it can not be disregarded. We think the fact that the

engineer so positively testifies that he did not see the signals is fatal to the appellant's position upon this branch of the case.

It matters not that the appellee's employees were negligent in running the train; the negligence of the deceased is an impassable barrier to a recovery on that ground. Whether the train was run at a furious rate of speed or not is immaterial, unless there was something making the rate of speed evidence of an intentional or wilful act. This is beyond controversy, and it can not be necessary at this day to cite authorities. The Illinois rule is not, and never has been, recognized in this State. From first to last our cases have opposed the doctrine of comparative negligence. Where a recovery is sought for an injury caused by negligence the plaintiff must establish a case of unmixed negligence or he will fail.

Decisions applicable to injuries received on a highway crossing do not apply to such a case as this, for both the traveller and the railroad company have a right to use the crossing; but the traveller has no right to use the track of the company at a place where there is no highway or crossing. The duty which the company owes to a traveller on a crossing or a highway is essentially different from the duty it owes to one trespassing on its track. In the one case there is a positive duty, in the other a mere negative duty not to wilfully do him harm. *Louisville, etc., R. W. Co.* v. *Phillips, ante,* p. 59; *Gaynor* v. *Old Colony, etc., R. W. Co., supra.*

If the place where the appellant's intestate was walking at the time he was struck was generally used by the public with the permission of the appellee, then he can not be regarded as a trespasser. *Louisville, etc., R. W. Co.* v. *Phillips, supra.*

Where a railroad company licenses the public to make use of its track in a city, town or village, it can not treat one who avails himself of the license as a trespasser. But it is not enough that persons do occasionally use the track, for, to constitute a license, it must appear, either expressly or by

clear implication, that the owner of the track authorized them to use it.    We think the evidence in this case does not establish a license.    If, however, we were wrong in this, still the appellant can not successfully complain of the action of the trial court in sustaining the demurrer.    This is so, because the theory of the complaint is that the deceased was on the track of the company some distance from a public crossing, and there is no averment that the public was licensed to use the place where he was killed.    The complaint is founded solely on the theory that the act of the appellee was a wilful wrong, and not on the ground that the deceased was on a part of the track which the company had licensed the public to travel over.    If the complaint had shown that the deceased was where he might be without becoming a trespasser, a very different case would be presented.    The theory of the complaint, however, is clearly that the deceased was wrongfully on the track, and was killed by an act implying a willingness to inflict the injury.    On this theory the appellant must recover, or not recover at all.    *Mescall* v. *Tully*, 91 Ind. 96, and cases cited ; *Green* v. *Groves*, 109 Ind. 519, and cases cited ; *First Nat'l Bank* v. *Root*, 107 Ind. 224.

Where evidence is incorporated, as it must be, in the demurrer, the only question presented, as we are inclined to think, is the sufficiency of the evidence to sustain a right of action, and exceptions to the rulings in rejecting or receiving evidence are not presented ; but to present such exceptions there must be a proper bill of exceptions.    If, however, the question on these rulings can be regarded as properly before us, the appellant can not have a reversal, because the rejected evidence, so far as it was material, bears entirely upon the question of a permissive use of the track, and was not, as appears from what we have already said, relevant to the issue tendered by the complaint.

Judgment affirmed.

Filed Nov. 15, 1887.