MANLOVE, ADMINISTRATOR, v. CLEVELAND, CIN-CINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 4,091.   Filed November 6, 1902.]

RAILROADS.—*Road Used as Footway.*—*Injury to Licensee.*—*Wilfulness.*— Plaintiff's intestate was killed while walking on a portion of defendant's railroad track which, with implied license, the public used as a footway. It was raining at the time and intestate's view was partially cut off by an umbrella she was carrying in front of her. The engineer had an unobstructed view through only one window of the engine. No signal was sounded and none was ordinarily required. The engine was moving at the rate of speed at which engines were usually run at that place, and it was not shown where intestate came upon the track, or that she was seen by those in charge of the train. *Held,* that the conduct of the defendant company was not such as to render it liable for a wilful injury.

From Madison Circuit Court; *J. F. McClure,* Judge.

Action by George H. Manlove, administrator of the estate of Ellen Davies, deceased, against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*W. F. Edwards, C. K. Bagot, A. Ellison* and *T. Bagot,* for appellant.

*A. B. Everhard, C. E. Cowgill* and *J. T. Dye,* for appellee.

ROBINSON, J.—Suit for personal injuries resulting in the death of appellant's decedent. A jury returned a general verdict in appellant's favor, and also returned answers to interrogatories upon which judgment was rendered in

appellee's favor notwithstanding the general verdict. That paragraph of complaint upon which the jury stated it based its verdict avers that appellee's road extends through the city of Alexandria, and for a long time had been used by the general public for travel as a footway, by and with the knowledge, consent, and license of appellee; that it was very generally so used as a footway and a great number of people passed back and forth along that portion of the track on foot each day, and that there was seldom a moment's time when there were not some foot passengers on the track, and nearly all the time there were a great many persons traveling upon the track, all of which facts were well known to appellee; that while the track was being and long had been so used, and at a time and hour when "it was likely and probable and practically certain that one or more people would be traveling upon said track, and while rain was fall- ing and making a noise such as to prevent a traveler upon said railroad track from hearing an engine thereon at any great distance, and rendering it necessary that such person or persons should and would be carrying umbrellas to pro- tect themselves from the rain, which umbrellas would to an extent exclude the view of and interfere with a person's hearing an approaching engine, and at a time when it was probable and likely and practically certain that one or more persons would be traveling upon said part of said track in a southerly direction, and at a time when no train was scheduled to pass over said portion of said railroad, and when the public would not expect an engine or train to pass over the same, and at a time when it would be extremely hazardous and dangerous to the life and safety of some person to run an engine over said part of said track at a high and dangerous rate of speed without carefully watching for such foot passengers, and giving proper signals and warn- ing of the approach thereof by ringing the bell or sounding the whistle, the defendant then and there at said time with full notice and knowledge of all of said facts, and with

full notice and knowledge that by so doing it greatly and needlessly endangered the life and safety of one or more human beings, and in total disregard of the life and safety of those who would probably and certainly be upon said track, did needlessly, wantonly, purposely, wrongfully, and wilfully blind and shade the windows of the cab of a locomotive engine in such a way as to exclude the view ahead along said track from the agents and servants of the defendant in charge of said engine, and prevent them from seeing said track in front of said engine, and any person walking thereon, and did then and there wilfully, wrongfully, and wantonly, without any regard for the consequences and in total and reckless disregard for the life and safety of those upon said track as aforesaid, run said engine in said condition over said part of said track in a southerly direction at a high and dangerous rate of speed of thirty miles an hour, and so operated as to make a very slight noise, and without ringing any bell, sounding any whistle, or giving any signal, notice, or warning whatever of the presence, approach, or passing of said engine, and at a time when no engine or train was scheduled to run on said track, the said defendant then and there well knowing that by so doing it greatly imperiled and endangered the life and safety of one or more human beings whom the said defendant's said agents and servants knew and were reasonably certain were walking upon said track; that plaintiff's said decedent was at said time walking upon and along said track in a southerly direction in front of said engine, and carrying an umbrella to protect herself from said rain; that she did not see or hear or have any notice or knowledge of the presence or approach of said engine; that said engine while being run and operated as aforesaid" ran against and over appellant's decedent causing her death; 'that her death was caused solely by reason of the "defendant's so wilfully, wantonly, and purposely neglecting and failing to ring any bell or sound any whistle or give any signal or warning of its ap-

proach, all as aforesaid, and so wilfully, wrongfully, and purposely running said engine under the conditions and circumstances above stated, and in the condition, form, and manner above stated and set forth."

In answering interrogatories the jury stated that decedent was struck by the engine about four o'clock p. m., August 24, 1897; that at the time she was fifty-four years old, was of ordinary bodily activity, and in full possession of the sense of sight and hearing usual in one of her age. The railroad track ran south from the depot at Alexandria to the Lake Erie crossing in the southwest part of the city and thence on south to and beyond where decedent was struck. There was no evidence as to the point she entered on the track, or whether she left it after entering and before being struck. The engine stopped at a point 300 to 600 feet north of the Lake Erie crossing, and about the time it started on south the whistle was sounded so as to be heard along the track still further south than where the decedent then was. It was about 2,200 feet from the crossing to the place where decedent was injured. Had decedent looked she could at any point between where she was struck and 100 feet north thereof have seen the engine a half mile. When decedent was thirty to two hundred feet north of the point where she was struck she could have looked north and have seen the engine in time to have left the track and avoided being struck and injured, but could not have done so at points twenty and ten feet north. When the train was 300 yards north of where decedent was struck it was running eighteen miles per hour. There was no evidence as to the rate of speed decedent was walking. She did not know a train was due. She did know the track was used as a footpath for pedestrians. There were three persons on and in charge of the engine and there was no evidence that any of them saw decedent or knew she was on the track, or that they had knowledge that it was practically certain that she was on the track. There was no evidence that the employes

knew that decedent was on the track carrying an umbrella in such a position that she could not see the engine in time to pass from the track before the engine reached her. The wind was from the southwest. Decedent was carrying an umbrella in front of and over her face. Of the persons who had walked along the track prior to this time three were women. There was no evidence that persons who had walked along the track prior to that time had done so while a heavy rain was falling or that they had carried umbrellas. The bell was last rung and the whistle last sounded at the Lake Erie crossing. There were two glass windows on the engine through which a view could be had of the track in front of the engine, one of which at the time was broken and was blinded by a coat or cloth; there was no evidence when this blinding was put on. An unobstructed view could be had through the other window. The employes knew the track was used by others than employes as a way of travel. The employes knew it was practically certain that at the time one or more persons would be on the track and would be injured by the engine; that they knew this from constant travel on the track. There was no evidence that the employes knew decedent was on the track or that there was anything to indicate to the employes, as the engine approached decedent, that she would not leave the track before the engine struck her.

The complaint does not proceed upon the theory that there is a liability on the ground of negligence. Moreover, the answers to interrogatories show such contributory negligence on decedent's part as would defeat a recovery on the ground of negligence. If there is a liability it must appear either that the employes intentionally ran the engine against the decedent, or that what they did at the time was done under such circumstances as evinced a reckless disregard for the safety of others and a willingness to inflict the injury complained of. *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301, 30 Am. Rep. 185; *Louisville, etc., R. Co.* v.

*Ader,* 110 Ind. 376; *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51; *Belt R., etc., Co.* v. *Mann,* 107 Ind. 89; *Terre Haute, etc., R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719.

It appears from the complaint and also from the answers to interrogatories that the decedent was, when killed, a licensee upon appellee's property. It does not appear that the privilege of user was for the common interest or mutual advantage of both the decedent and the company, but that the privilege existed for the benefit of decedent only. She was permitted to use the track as a footpath for her own interest and convenience. The track was a place of known danger, and was the exclusive property of the company, upon which no unauthorized person had any right to be. She differed from a trespasser only in the fact that she was upon the track with that consent of the company which might be implied from the company's failure to interfere with the previous like use by others. But because the company made no attempt to prevent travel along its track, it did not thereby invite the use of its track for the purposes of such travel. As she was using the track for her own convenience, she went there at her own risk, and enjoyed the license with its "concomitant perils." *Indiana, etc., R. Co.* v. *Barnhart,* 115 Ind. 399; *Evansville, etc., R. Co.* v. *Griffin,* 100 Ind. 221, 50 Am. Rep. 783; *Jeffersonville, etc., R. Co.* v. *Goldsmith,* 47 Ind. 43; *Cleveland, etc., R. Co.* v. *Adair,* 12 Ind. App. 569; *Woolwine* v. *Chesapeake, etc., R. Co.,* 36 W. Va. 329, 32 Am. St. 859, 16 L. R. A. 271; *Benson* v. *Baltimore Traction Co.,* 77 Md. 535, 20 L. R. A. 714, 39 Am. St. 436; *Pomponio* v. *New York, etc., R. Co.,* 66 Conn. 528, 50 Am. St. 124, 32 L. R. A. 530; *Redigan* v. *Boston, etc., Railroad,* 155 Mass. 44, 31 Am. St. 520, 14 L. R. A. 276; *Lary* v. *Cleveland, etc., R. Co.,* 78 Ind. 323, 41 Am. Rep. 572.

Some cases seem to hold that, whether a person upon a railroad track is a licensee or a trespasser, the company

owes "him no protection from its mere negligence." A trespasser has no right of action where the tort complained of is no more than the omission to exercise care. There is no liability in such case unless the act complained of was wilful. And while a trespasser on a railroad track is not an outlaw, yet, as the company can not be held to anticipate his presence upon the track, and is not chargeable with knowledge of danger to him from operating its trains at that point, it can not be said that an injury was wilfully inflicted upon him by employes in charge of an engine or train, unless, through some means, they had knowledge of his presence on the track, or they disregarded some signal of warning sufficient to arouse attention and create a belief that it would be dangerous to proceed. See *Palmer* v. *Chicago, etc., R. Co.*, 112 Ind. 250; *Terre Haute, etc., R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719; *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 23 L. R. A. 552.

But a licensee who is himself without fault may have a right of action because of the company's negligence. Where the company acquiesces in the use of its track for a time sufficient to amount to a license, it is chargeable with knowledge of the danger to human life from operating its trains at that point. Acquiescing in the use of its tracks by any and all pedestrians who may desire so to do, it is bound to know that at any or all times there may be some one exercising this privilege. So that there may be a liability for a wilful injury although the presence on the track of the particular person injured was not known. If the "injurious act or omission was by design, and was such,—considering time and place,—as that its nature and probable consequence would be to produce serious hurt to some one," there is a liability. *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51.

The point at issue as presented by the complaint is in the high and dangerous rate of speed of the engine over a portion of the track used by the public as a footpath, at a time

when it was probable and practically certain that one or more people would be traveling along the track, without giving any signal or warning whatever of the approaching engine, and with the engine windows blinded so as to prevent the persons in charge of the engine from seeing the track in front of the engine. The general verdict finds all the material averments of the complaint to be true. And this general verdict is in no way affected by answers to interrogatories that find certain material facts which are also averred in the complaint.

It is not charged in the complaint that the employes in charge of the engine knew decedent was walking along the track, and the jury answer that there was no evidence that the employes saw the decedent on the track, or that they knew she was on the track as the engine approached her. While it thus appears that decedent had come into a situation of peril, it also appears that those in charge of the engine had no knowledge of her situation in time to have prevented the injury. Had those in charge of the engine seen decedent walking along the track, the failure to give any warning of the approaching engine would not have been a wilful wrong. They would have had the right to presume, until the last moment, that decedent would leave the track in time to avert danger, because it does not appear that it was apparent that for any reason she was unable to look after her own safety. *Palmer* v. *Chicago, etc., R. Co.*, 112 Ind. 250; *Terre Haute, etc., R. Co.* v. *Graham*, 95 Ind. 286, 48 Am. Rep. 719; *Terre Haute, etc., R. Co.* v. *Graham*, 46 Ind. 239; *Indianapolis, etc., R. Co.* v. *McClaren*, 62 Ind. 566. So that if there is any liability on the part of the company it must be based upon the proposition that the injurious act or conduct or omission on the part of the employes was by design and was such,—considering time and place,—as that its nature and probable consequence would be to produce injury to some one. *Parker* v. *Pennsylvania Co.*, 134 Ind. 673, 23 L. R. A. 552; *Louisville, etc., R. Co.* v. *Bryan*, 107 Ind. 51.

Decedent was using the track at the sufferance of the company. The place in question was between stations and public crossings. It was not at a place where any signals were required to be given. As a common carrier the company had the right to the free and undisturbed use of the track at that place. Decedent was using the track subject to all the risks incident to such use. Anyone so using the track was bound to know that a train was liable to pass over the track at any time, that it might be running at the rate of speed at which trains were usually run at that place, and that the license to go upon the track was subject to the risks incident to the use of the track by the company as it was used by it at the time the license was granted. See 3 Elliott on Railroads, §§1250, 1251.

To fix a liability the employes in charge of the engine are to be charged with conduct which is *quasi* criminal. *Louisville, etc., R. Co.* v. *Bryan, supra.* This conduct must be determined from the circumstances and conditions surrounding them at the time. It appears the engine was running about eighteen miles an hour. It does not appear from the complaint or answers that the engine was running at a speed other than the usual speed at that place. The employes could presume that any person using the track must know that a train might pass at any time running at the usual speed. The answers show that the view from the engine along the track was obstructed only on one side of the engine, thus negativing the averment that the view of the track was excluded from view by the blinded windows. But the complaint does not show, neither do the answers, whether the decedent, when struck, had been walking along the track for some distance, or had just entered upon the track. So far as disclosed she may have stepped upon the track immediately in front of the engine. So that, before their failure to see decedent can be considered as a circumstance in attributing to them a wrongful omission, it should be made to appear that she was in a

Manlove *v.* Cleveland, etc., R. Co.

place where she would have been seen by them had they performed their duty. This also goes to the averment and answers that no warning signals were given. This was not at a place where signals were ordinarily required, and it does not appear that the conditions at the time were necessarily such as to require the giving of any warning signals. The engine could be seen a half mile away by a person walking on the track. The company certainly had the right, as against a licensee, to run its trains over this particular portion of its track in the usual and ordinary manner.

It is true a person may be held liable for the consequences of a wilful act without an actual knowledge of the presence of the object acted upon. *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 23 L. R. A. 552. But this principle can not control in this case for the reason that it is not disclosed that the performance of any act which is charged to have been wilfully omitted would necessarily have given knowledge of decedent's presence upon the track. The employes may have failed to learn of her presence upon the track in time to warn her and avoid injuring her, either from their failure properly to watch for persons on the track, or from the fact that she may not have come upon the track until immediately before she was struck. In the absence of some showing to the contrary it must be presumed that the engine was run at the speed at which engines were usually run at that place. It does not appear that the performance of any alleged omitted duty would have discovered the decedent's presence on the track, or that any duty was omitted, the performance of which would necessarily have disclosed the necessity of giving any warning signals. When all the conditions and circumstances surrounding the employes at the time are taken into consideration, we can not say that their conduct was such as showed a reckless disregard for the safety of others, and a willingness to inflict the injury complained of.

Judgment affirmed.