FREITAG v. CHICAGO JUNCTION RAILWAY COMPANY.

[No. 6,228. Filed October 27, 1909. Rehearing denied November 22, 1910.]

1. TRIAL.—*Interrogatories.—Verdict.—Conflict.*—Answers to interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith on any supposable state of the evidence within the issues. p. 494.

2. RAILROADS.—*Pedestrians.—Invitation.— Complaint.— Theory.*— A complaint alleging that a stock-yards and transit company owned and operated a railroad yard, that a packing company employed a large number of servants, that such transit company maintained avenues, streets and paths across such yards for the use of such servants, that the plaintiff was a servant of such packing company and that in crossing such yard, in a snow storm, in the dark, she was run over and injured by a freight train negligently operated by defendant railroad company, by running without signal, proceeds upon the theory that the plaintiff and defendant were in such yard by invitation, and that plaintiff was injured because of defendant's negligence. p. 494.

3. RAILROADS.— *Ownership.— Interrogatories.— Conflict.*— An · answer to an interrogatory to the jury, that the plaintiff's injury occurred on the private property of defendant railroad · company, is irreconcilable with any evidence admissible under a complaint alleging that such injury occurred upon the private property of another. pp. 497, 499.

4. RAILROADS.—*Trespassers.—Duty Toward.*—A railroad company is not required to anticipate the presence of trespassers upon its tracks, and is liable to them only for wilful, wanton, or reckless injuries inflicted. p. 497.

5. RAILROADS.—*Trespassers.—Contributory Negligence.*—A pedestrian that knowingly enters upon a railroad track at a point of danger and where an entry thereon is forbidden, is guilty of contributory negligence. .p. 497.

6. RAILROADS.—*Municipal Ordinances.—Places Affected by.*—A municipal ordinance prescribing the method of operating railroad

trains, applies to the operation of trains on the private grounds of the companies, as well as upon the public places, within the city. pp. 498, 503.

7. RAILROADS.—*Ownership.—Private or Public.—Interrogatories.*— An answer to an interrogatory, that the plaintiff was injured on the private property of defendant railroad company is inconsistent with a complaint alleging that such injury occurred upon a street. p. 500.

8. RAILROADS.—*Wilful Injuries.—Contributory Negligence.*—Contributory negligence constitutes no defense to an action against a railroad company for wilful injuries. p. 502.

9. RAILROADS.—*Negligence.—Wilful Injuries.—Complaint. — Paragraphs.—Verdict.—Interrogatories.—Conflict.*—A general verdict on a complaint consisting of several paragraphs some of which alleged negligence, and some, wilful misconduct, is not overturned by answers to interrogatories which merely negative negligence. p. 502.

10. APPEAL.—*Mandate.*—Where justice requires, a new trial may be ordered, though the appellant technically might be entitled to a judgment. p. 502.

11. RAILROADS.—*Trespassers.—Knowledge of Presence of.—Question for Jury.*—Whether a railroad company knew of plaintiff's presence upon its track, is a question for the jury. p. 503.

12. RAILROADS.—*Contributory Negligence.— Jury.*— Whether the plaintiff was guilty of contributory negligence in attempting to cross defendant railroad company's track, is a question for the jury. p. 504.

From Laporte Superior Court; *Charles F. Truesdell,* Special Judge.

Action by Tillie Freitag against the Chicago Junction Railway Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*B. J. Wellman, Arthur A. House, V. S. Reiter* and *L. L. Bomberger,* for appellant.

*John B. Payne, John B. Peterson* and *John D. Black,* for appellee.

WATSON, J.—This was an action to recover damages for a personal injury.

The complaint was in eight paragraphs. Appellee filed a general denial. During the trial appellant, by leave of court, filed a ninth paragraph of complaint and dismissed

the second, third and fourth paragraphs. Appellee demurred to said ninth paragraph, but the demurrer was overruled, and a general denial was then filed.

The jury, upon a trial of the cause, returned a verdict for appellant in the sum of $25,000, and also answered interrogatories submitted to it by appellee.

Appellant moved for judgment on the verdict, but the motion was overruled. Appellee moved for judgment on the interrogatories. Its motion was sustained and judgment was rendered thereon.

Each of the errors assigned pertains to the judgment rendered on the interrogatories, and they may be considered together.

The facts specially found by the jury in the answers to interrogatories were as follows: "Q. Was there, at the time of plaintiff's injury, a viaduct, or bridge, over the railroad tracks at the crossing near which plaintiff was injured? A. Yes. Q. Had said viaduct been there for from nine to twelve months before the date of plaintiff's injury? A. Yes. Q. Was there, at the time of plaintiff's injury, and had there been for from nine to twelve months previous thereto, conspicuous signs, at each of the three entrances to said viaduct at the railroad crossing, painted on boards, the boards being sixty-one inches in length and forty-seven inches in width, and the large letters on said signs, some seven inches high, containing the following words: 'Dangerous crossing, walk over viaduct, crossing on tracks forbidden?' A. Yes. Q. Had plaintiff seen said signs before the day of the accident? A. Yes. Q. At the time plaintiff approached said crossing, did she see the steps or entrance to the viaduct? A. Yes. Q. At the time of and immediately before plaintiff's injury, did some other persons pass over said viaduct in safety? A. No, not before, but immediately following. Q. At the time plaintiff approached said railroad crossing, could she have passed over said railroad crossing in safety by the use of

said viaduct, if she had used said viaduct instead of attempting to cross over the tracks at grade? A. No. Owing to the structure's being covered with ice, and the wind blowing seventy-two miles an hour. Q. Is it not a fact that plaintiff had used said viaduct before the time of her injury? A. Yes. Once. Q. When plaintiff, on her way home, reached the railroad tracks, did she find the railroad crossing blocked? A. No. Only partially. · Q. At the time plaintiff walked out upon said railroad tracks was it very dark? A. Yes. Q. At the time plaintiff undertook to pass over said railroad tracks, did she know that said tracks were in frequent use by the switching crews of defendant, in switching cars backward and forward at the place where she walked? A. Yes. Q. Did plaintiff know when she walked out on to said tracks, that, by reason of the darkness and the probable movement of engines or cars on said tracks, the place where she walked was a place of danger? A. Yes. Q. Was the place where plaintiff was injured the private property of defendant? A. Yes."

The rule is well established that the general verdict will control the judgment, unless such a material conflict is shown to exist between the general verdict and the

1. facts specially found that such conflict cannot be reconciled by taking into consideration any other facts provable under the issues. *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188; *Union Traction Co.* v. *Barnett* (1903), 31 Ind. App. 467; *Robinson & Co.* v. *Etter* (1903), 30 Ind. App. 253; *Boyd* v. *Schott* (1902), 29 Ind. App. 74; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512; *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162; *Johnson* v. *Gebhauer* (1902), 159 Ind. 271.

The averments of the first paragraph of complaint were, in part, as follows: "That long prior to December 27, 1904, the Union Stock-Yards and Transit Company

2. owned and operated stock-yards in the city of Chicago, Illinois, upon which were located railroad

yards, tracks and stock-yards pertaining to the slaughtering establishments; that more than twenty thousand persons were daily employed in and about the stock-yards and the various establishments therein; that one of the slaughtering establishments was owned and operated by Armour and Company, and it used the stock-yards under and by virtue of an agreement with the Union Stock-Yards and Transit Company for a valuable consideration, the amount and character of which appellant did not know; that the Union Stock-Yards and Transit Company also 'kept and maintained a large number of railroad tracks, locomotive engines and cars propelled by steam, which ran into and through the stock-yards and were used in connection with the stock-yards for the mutual accommodation, benefit and profit of the concerns therein, including Armour and Company, and defendant, on said date, and long prior thereto, ran its locomotive engines and cars over the tracks of the Union Stock-Yards and Transit Company in and about the stock-yards to and among various plants and establishments therein; that on said date, and long prior thereto, the Union Stock-Yards and Transit Company kept and maintained for travel certain avenues, streets, foot-paths and ways in and about the stock-yards for the use of the persons, firms and corporations, including Armour and Company, engaged in business therein, and for the use of their agents, servants and employes in going to and coming from different places of work and business in the stock-yards; that one of these avenues was designated as Transit avenue, and crossed at grade, or on a level, certain of said railroad tracks; that Transit avenue extended in a northerly and southerly direction, and the railroad tracks were three in number, parallel to one another and running in an easterly and westerly direction; that among the foot-paths before referred to there was on said date, and long prior thereto had been, one which left said Transit avenue immediately south of the intersection thereof with said railway

tracks and ran in a northwesterly direction across the rail-
way tracks and across Thirty-ninth street, and was kept and
maintained by the Union Stock-Yards and Transit Com-
pany during said time for the use of pedestrians having
business in and about the stock-yards, or who were em-
ployed therein by Armour and Company, or other persons;
that the location and use of the streets, avenues, foot-paths
and ways were well known to defendant and its employes
using the railway tracks crossing them, on and prior to
said date; that on said date appellant was in the employ
of Armour and Company at its place of business in the
stock-yards, and left her employment on the night of that
day, passed along Transit avenue in a northerly direction,
upon the path leading therefrom as aforesaid, in a north-
westerly direction towards Thirty-ninth street across said
railway tracks; that while she was upon said path and the
northerly track of the three tracks then and there running
east and west, appellee carelessly and negligently backed
a train of freight-cars down upon and against her, without
ringing a bell, blowing a whistle, or giving other signal, and
without displaying any lights or other markers to indicate
its presence or approach; that at the time there was a high
wind and violent snow storm, and the night was very dark,
so that appellant could not see nor hear the approach of
the train of cars which appellee backed upon her, and did
not know of its approach until it was too late to escape
therefrom; that appellee then and there ran said train over
said plaintiff, and crushed, bruised and wounded her so
that it became necessary to amputate both of her legs. She
demands judgment for $100,000.''

The theory of this paragraph of complaint is that the
ground and tracks where the injury occurred were owned
by the Union Stock-Yards and Transit Company; that both
appellant and appellee were in said yards by permission
and invitation of the stock-yards company, and that appel-
lant was injured by and through negligent acts of appellee.

The jury, however, in its special finding of facts, found that the injury occurred on the private property of appellee. On no theory can this finding be reconciled with any proofs which might be adduced under the allegations of ownership contained in the first paragraph of complaint. The answer to interrogatory fourteen, which says the place where plaintiff was injured was the private property of appellee, directly negatives the theory of ownership by the stock-yards company.

Under the finding that appellant was on the private property of appellee, the question then arises as to the degree of care necessary to be exercised by appellee towards appellant.

In 2 Thompson, Negligence (2d ed.) §1747, the rule is stated to be that "the railway company is under no special duty to anticipate his [a trespasser's] unlawful trespass in order to avert injury to him; its duty to him begins at the moment when its servants discover him in a situation of danger, and not before. Speaking generally, the duty of the railroad company is limited to refraining from inflicting injury upon him, wilfully, wantonly, or recklessly." This doctrine has been announced as the rule of this State. See *Cannon* v. *Cleveland, etc., R. Co.* (1902), 157 Ind. 682; *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62; *Hill* v. *Indianapolis, etc., R. Co.* (1903), 31 Ind. App. 98; *Manlove* v. *Cleveland, etc., R. Co.* (1902), 29 Ind. App. 694; *Dull* v. *Cleveland, etc., R. Co.* (1899), 21 Ind. App. 571. It is not averred that appellee, its agents or servants, knew, or had reason to know, of appellant's danger.

The further facts that appellant knew of the dangerous condition, and that crossing the tracks was forbidden, tend to show that appellant voluntarily assumed the risk by going upon the tracks at a point where she would become a trespasser.

The fifth paragraph of complaint sets out the same facts

as the first in regard to the relation of the parties, then proceeds as follows: "That, by virtue of the stat-

6.  utes of the State of Illinois, city councils of cities have a right to regulate the speed of cars and loco-motives within city limits, the keeping of flagmen, and to provide for protection against injuries to persons and prop-erty; that under the provisions of that statute the city of Chicago, a municipal corporation of said state, had long prior to the date of appellant's injury enacted a certain ordinance as follows: 'Section 1730. Lights at Night. Every locomotive engine, railroad car or train of cars run-ning in the nighttime on any railroad track in said city, shall have and keep, while so running, a brilliant and con-spicuous light on the forward end of such locomotive en-gine, car or train of cars. If such engine or train be back-ing it shall have a conspicuous light on the rear car or en-gine, so as to show the direction said car is moving.' 'Sec-tion 1733. Bells to be Rung. The bell of each locomotive engine shall be rung continuously while running within said city, except locomotives running upon railroad tracks situated east of Indiana avenue, on the shore of Lake Mich-igan, between Twenty-second street and Park row, in said city, where no bell shall be rung or whistle blown, except as signals of danger.' 'Section 1727. Speed of Trains. No railroad corporation shall by itself, agents or employes run any passenger train upon or along any railroad track within the corporate limits of the city of Chicago, at a greater rate of speed than ten miles an hour, nor shall any such corpo-ration by itself, agents or employes, run any freight-car or cars upon or along any railroad track within said city, at a greater rate of speed than six miles an hour.' That on said December 27, 1904, appellant was in the employ of Ar-mour and Company in the stock-yards, and on the night of said day, passed along Transit avenue, in a northerly direction, upon the path leading therefrom in a north-westerly direction, towards Thirty-ninth street across the

three parallel railway tracks; that while she was upon said path and the northerly track of the three tracks, appellee carelessly and negligently backed a train of freight-cars down upon her, ran over, crushed, bruised and injured her; that such train was carelessly and negligently operated by appellee at the time, in violation of the ordinances of the city of Chicago heretofore set forth, in this: That appellee failed and neglected to have and to keep a brilliant, conspicuous light on the rear car of said backing train, but, on the contrary, had no light, lantern or other signal in or about the end of said train; that appellee negligently failed to ring the bell of said locomotive engine, and no bell was rung at the time of or prior to said accident; that said train was run at a greater rate of speed than six miles an hour, to wit, ten miles an hour; that at the time of the accident there was a high wind and a violent snow storm, and the night was very dark, so that appellant could not see nor hear the approach of the train; that no warning signal or indication of any kind was given of its approach, and she did not know of it until it was too late for her to escape therefrom."

By the foregoing averments it appears that the negligence alleged consists in appellee's failing to observe the ordinances of the city of Chicago regulating the running of trains within the corporate limits of the city.

This paragraph alleges that appellant had left the public highway and was on the path which traversed diagonally the tracks of appellee. This, the jury found, was on the private property of appellee, and therefore was not such a place as the city ordinances were intended to regulate. *Illinois Cent. R. Co.* v. *Schmitt* (1901), 100 Ill. App. 490; *Eggmann* v. *St. Louis, etc., R. Co.* (1893), 47 Ill. App. 507. See, also, *Smith* v. *Chicago Junction R. Co.* (1906), 127 Ill. App. 89.

3. Proof adduced under the averments of the fifth paragraph of complaint will not avail appellant as against the facts specially found by the jury.

The sixth paragraph of complaint alleges, in substance, that the injury occurred on Transit avenue, a public street in said city of Chicago, and that appellant was injured by appellee's negligence in operating a locomotive and train of cars, "without ringing a bell, blowing a whistle, or giving other signals or warnings, and without displaying any lights or other markers indicating the train's presence or approach," and that the flagman negligently failed to warn appellant of the approach of said train.

The seventh paragraph alleges, in addition to the averments in the sixth, the city ordinances set out in the fifth, and charges negligent violation of such ordinances.

7. The findings of the jury effectually refute the theory that the injury occurred on a public highway, and proof of the facts therein alleged could not be reconciled with a finding that the injury occurred on the private property of appellee.

The averments of the eighth paragraph of complaint were, in part, as follows: "That on and a long time prior to December 27, 1904, appellee operated a steam railway, running in an easterly and westerly direction near the intersection of Transit avenue and Thirty-ninth street, in the stock-yards in the city of Chicago, Illinois; that the stock-yards contained a large number of sheds, slaughtering establishments, with appurtenances connected therewith, and more than twenty thousand persons were daily employed in and about the stock-yards during all of said time; that the aforesaid railway tracks were on said date, and for more than twenty years prior thereto had been, crossed, in the vicinity of Transit avenue, by persons employed in the stock-yards; that about 5:45 o'clock in the evening, appellant, with about five thousand other people, was crossing the railway tracks used by appellee at a point in the vicinity of said Transit avenue; that appellant and said other people had daily crossed said tracks at said point at said

hour for more than a year prior to said date; that appellee knew that appellant and said large number of other people were in the habit of crossing at said time and place, and that they were crossing on said date; that prior to and at the time appellant was crossing said tracks the night was very dark, snow was falling, and the wind was blowing at the rate of seventy-two miles an hour; that appellee then and there backed a train of freight-cars along one of said tracks and upon appellant, while she was crossing said track, without blowing a whistle, ringing a bell or displaying any signals, and without adopting, employing or using any other means of warning appellant and said other persons of the approach of said cars; that appellee and its agents, servants and employes in charge of said train of cars well knew of the perilous position of plaintiff at said time and place, and knew that she was approaching said track or was upon it before said train reached her, and had ample time and opportunity to warn and notify her of her danger and of the approach of said train, so that she could and would have escaped therefrom and avoided injury, but notwithstanding its knowledge of her presence there and the liability of injury to her by said train appellee wilfully backed said train upon her, and wilfully failed and refused to warn her of its approach, and wilfully ran over, crushed, bruised and wounded her; that as she approached the track upon which she was injured, and before going thereon, she looked both ways for approaching trains, and listened therefor, and she neither saw nor heard any train or cars approaching her; that on account of the condition of the weather it was impossible to hear the noise and rumble of approaching cars; that there was no way for appellant to ascertain the approach thereof, except by signals displayed thereon or thereabout, or by warnings given by the employes in charge thereof, all of which facts were well known to appellee, its servants and employes in

charge of its train, tracks and grounds at said time and place.''

The theory of this paragraph was wilful injury by appellee. No demurrer was filed and the sufficiency of the allegations is not in question. We have to consider only whether proof of the averments therein contained, with all legitimate inferences to be drawn from such proof, would be sufficient to support the general verdict.

8. The question of contributory negligence by appellant is not pertinent here, for the reason that contributory negligence on the part of the one injured is no excuse for wilful injury.

9. Under the allegations of this paragraph there might well have been adduced proof which would sustain the charge of wilful injury. The special findings of the jury show no fact which would contravene such a result.

Therefore, we conclude that it was error to render judgment on the interrogatories, notwithstanding the general verdict.

10. When the justice of the cause requires it, the court on appeal shall remand the cause to the trial court for a new trial. §702 Burns 1908, §660 R. S. 1881; *Stewart* v. *Patrick* (1892), 5 Ind. App. 50; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662; *Matchett* v. *Cincinnati, etc., R. Co.* (1892), 132 Ind. 334; *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170.

Since the record in this court does not present for our consideration questions which might arise on the merits of the cause, we deem it best to follow the established rule, and remand the cause for a new trial.

It is not necessary to discuss in this opinion the questions raised as to the ninth paragraph of the complaint, since the result in any event must be the same, and such questions may not arise upon a new trial.

The judgment is reversed, and the trial court is ordered to sustain a motion for a new trial if filed within sixty days from October 27, 1909; otherwise, the trial court is directed to render judgment on the general verdict.

## ON PETITION FOR REHEARING.

WATSON, P. J.—The opinion herein, so far as it is held that an ordinance regulating the running of trains within the corporate limits of a city was not intended to regulate such running except on highway crossings, is hereby withdrawn, and the opinion is modified so as to hold that a city ordinance for the regulation of the running of trains within the corporate limits of a city applies to all points within such corporate limits. The language of the ordinance admits of no construction. It is plain and unambiguous. The cases inadvertently followed and cited do not, on further examination, commend themselves, and we therefore decline to adhere to them.

An ordinance of this character may not be disregarded at any place within the corporate limits to which it is made to apply. *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 44 L. R. A. 638; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364; *Whitson* v. *City of Franklin* (1870), 34 Ind. 392; *Chicago, etc., R. Co.* v. *Lawrence* (1907), 169 Ind. 319. The facts found are not, therefore, sufficient to overcome the general verdict as based upon the fifth paragraph of complaint.

The averments, which appellant relies on as being sufficient to show knowledge by appellee of appellant's danger, are not direct and positive, as required by the rules of pleading. Whether the circumstances set out, if proved, would justify a finding of knowledge, under appropriate averments, is a question of fact.

Contributory negligence is a matter of conduct. Whether

appellant was guilty of such negligence in failing to use the viaduct in its then condition, and in failing to avoid the train by which she was run down, were also questions of fact.

Leave is given to amend the pleadings if so desired, and the petition for rehearing is overruled.